## Taylor, &c vs Taylor's Executor.

CHANCERY.

ERROR TO THE MADISON CIRCUIT.

Case 126.

*Guardian and ward. Costs. Sale of infant's real estate. Parties.*

JUDGE MARSHALL delivered the opinion of the Court.

June 27.

WILLIAM HARRIS and his ward Lucy Ann Taylor, who sues by Harris her next friend and guardian, unite in this bill against the executor of William C. Taylor, former guardian of the same ward, and his sureties in his bond as guardian. The bill calls for an account and settlement and payment of a large sum alledged to be due from the former guardian, principally on account of the proceeds of the ward's land, sold on petition of said guardian, uniting with others co-heirs with her father. The complainants ask for payment, first out of the assetts in the hands of the executor, and then from the sureties, and if they should not be liable for the proceeds of the land, they pray satisfaction from the proceeds of property mortgaged by the former guardian, to secure certain creditors and sureties, in the order named, and then all other creditors, and if all other sources should prove insufficient, they pray that the land sold as aforesaid may be subjected. The purchaser of the ward's land and the persons preferred in the mortgage, before the sureties in the guardian's bond, are made defendants, but no others except the sureties, one of whom is also made a party as the executor of the former guardian.

The object of the bill.

6m 559
91 586
6bm 559
112 550

It appeared that the mortgaged property had been principally sold by the mortgagor for the benefit and with the assent of all concerned, and that the proceeds which had not been appropriated, had come to the hands of the executor, and the Court being of opinion that the sureties were not liable for the proceeds of the ward's land sold under the petition, and all other estate of the ward having been paid over to the present guardian before the hearing, it was decreed that the executor should pay the balance remaining in his hands, to the complainants and other

Decree of the Circuit Court.

TAYLOR, &c.
*vs*
TAYLOR'S EX'R.

unpreferred creditors of the decedents. The sum as-certained in the decree as the *pro rata* proportion of the ward, is considerably less than the amount due to her, and no provision is made even by a decree against assetts in the hands of the executor, or which may come to him for payment of that part of the ward's claim which is thus left unsatisfied.

To reverse this decree the complainants prosecute this writ, and now contend that the sureties in the former guardian's bond should have been made liable, and that enough has not been decreed. On the other hand cross errors are assigned, objecting that Harris and his ward were improperly joined as complainants, that the proper defendants were not made, and that two much was de-creed. Both parties complain that each was improperly decreed to pay their own costs.

The principal question is whether the sureties in the guardian's bond, are liable for the proceeds of the ward's land sold on his petition, which proceeds were afterwards paid to him, and charged against him as guardian, in his settlement with the County Court Commissioners, upon his own statement then made. The surety who answers the bill (the other being proceeded against as a non-resi-dent,) seems to deny this liability mainly on the ground that a security in the County Court is not responsible for the proceeds of a sale of the ward's land, made under a decree of the Circuit Court. But the case of *Withers, &c.* vs *Hickman,* (6 *B. Monroe,* 292,) decides that even when a bond has been taken in the Circuit Court, this does not relieve the sureties in the County Court bond from their responsibility for the fund, if it has come to the hands of the guardian, but the bond in the Circuit Court is regarded as an additional security. Of course when no bond is taken in the Circuit Court, the whole security must rest on the County Court bond, though the money of the ward has been recieved by the guardian under a proceeding in the Circuit Court. In a proceed-ing under the statute of 1790, for the sale of an infant's estate, no new security is required to be given by the guar-dian. The law in that case looks wholly to the County Court bond. And if in a proceeding under the act of

Sureties of a statutory guar-dian into whose hands money has come, the pro-ceeds of the real estate of the ward, sold by the Chancellor's decree, are re-sponsible to the ward upon the guardian's bond, though security may have been taken by the Chancellor, (6 *B. Mon.* 292.)

1813, the Circuit Court omits to take bond from the guardian, by whom under its authority the petition is filed, the sale made and the money collected, it by no means follows that the omission of the Court to take the additional security should deprive the ward of the original security already provided in the County Court, for all money or estate of the ward which may come to the hands of the guardian. It should rather be presumed in such case, that the omission to take a new bond in the Circuit Court, arose from confidence in that already given by the guardian. And if it were conceded that the County Court securities might in case of loss, call on the securities in the Circuit Court for contribution, if a bond had been taken in the latter Court; still upon the question whether in case of omission to take bond in the Circuit Court, the loss should fall upon the ward who has done nothing, or on the sureties who have enabled the guardian to assume that office, and thus to acquire the controll of the ward's estate, we think equity decides against the sureties.

It is further objected that the record of the proceeding for the sale of the ward's land, contains no order or decree placing the proceeds in the hands of the guardian as such, or recognizing that they are there. But he filed the petition as guardian, and although he was called Commissioner in the order for making the sale and collecting the proceeds, he nevertheless continued to be guardian. And it must be supposed, that it was either because he was known in the suit as guardian, or because he had deceived the Court by the statements of the petition with regard to the value of the land, that when he reported that he had taken from the purchaser specific notes for the amount due to the complainant, his ward, it was deemed unnecessary to make a special order in regard to any further disposition of them. He did, in fact, retain them, collected the money as guardian, and charged himself with it as such, in his accounts. As it cannot be presumed that the Court would knowingly have permitted a mere stranger to collect and hold the money of an anfant suiter, to the amount of more than $4,000, without security and without any order, for years, in relation to

Vol. VI.          71

*Margin note:* TAYLOR, &c.
vs
TAYLOR'S EX'R.

*Margin note:* When the guardian is appointed Commissioner by the Chancellor, to sell and collect the proceeds of infants' land sold, upon his receipt of the fund it is thenceforth in his hand as guardian, and he and sureties are responsible to the infant.

A statutory guardian who is appointed Commissioner to sell and receive, and who does sell and receive the proceeds of the sale of his ward's real estate, cannot, refuse to pay over the fund to the ward, tho' the sale may have been irregular, whilst the ward is willing to abide by it.

it, the necessary inference is, that he was understood as receiving and holding it on his responsibility as guardian, and in that character.

But it is said that the proceeds of the land do not belong to the ward. because the sale was not obligatory on her, but was void for irregularity and want of jurisdiction. To whom then does the money belong which the guardian received for the ward's land? And who is responsible for it if the guardian and his sureties are not? The purchaser having paid the price to the guardian, wishes to retain the land and does not claim or ask for the money. The ward, by her guardian, is content that the sale should stand, and asks for the money which has been paid. The sureties cannot compel the infant to avoid the sale, even if it be in her power to do so. They have no right to withhold money received from a third person for her land, because she may hereafter elect to take the land instead of the money. She is entitled to the money until she elects to take the land. When she makes that election the purchaser will, in equity, be entitled to be restored to the price. The sureties have no right to make this question as to the validity of the sale. It was made on the petition of the guardian, and by the order of the Court; and neither the guardian nor his sureties can answer the infant's claim, by saying that the sale was not valid, and therefore she has no right to the money. This is a question between her and the purchaser, who in effect admits her title; and if it were certain that when she arrives at full age, she could and would claim the land, there would still be no reason why she should be kept out of both land and money until that time. If she would, in such case, be bound to refund the money, that is an unanswerable reason why it should now be paid to her; and if she were now to avoid the sale, with the condition imposed, of restoring the price to the purchaser, it is by no means clear that even then these sureties might not be compelled to pay so much of the price received by her late guardian, as had not been paid over to her; nor is it clear that her reception of the money under a decree in this suit, would not preclude any future question by her as to the validity of the sale.

The record of the petition shows that deeds were made to the purchaser, and the Court cannot be admitted to have had further power over the case, except with regard to the disposition of the purchase money. The petition states that the interest of each heir in the land therein referred to, would not exceed in value, $100. If this had been true, no bond would have been necessary under the statute. The inference that the Court may have been deceived by this statement, into the opinion that the case was of little consequence, that no bond was requisite, and that the proceeds of the sale would, as a matter of course, go into the guardian's hands on the security of the County Court bond, derives strength from the fact that no order seems at any time to have been made, upon any of the reports of the Commissioner, in reference to the price for which the land sold, and that there is nothing in the record to show that the real value of the sale was ever brought to the actual knowledge of the Court. But the record shows that the guardian was guilty of a flagrant breach of duty and of trust, in misrepresenting the value of his ward's estate, brought before the Court for sale; and as the certain tendency and probable consequence of such misrepresentation was to withdraw from her interest that protection which the law intended to afford, it comes with a bad grace from the sureties who placed him in this office of trust, and who have expressly bound themselves for his faithful performance of all its duties, to rely upon the very consequences of his breach of duty, as relieving them from liability, and throwing loss upon the infant ward, to whom they undertook for his fidelity. We are of opinion that the plea cannot avail them, and that they are bound for the proceeds of the sale.

This conclusion also decides the question as to costs against them. But there is no error in the decree in mitigating the charge of interest as reported by the Commissioner.

Costs are properly decreed against the sureties of a defaulting guardian.

Upon the cross errors assigned, we are of opinion that the objection to Harris' being joined as a party complainant, is wholly unavailable. He has not the legal title to the money or estate of the ward, and could not maintain

There is no impropriety in the guardian uniting with the ward in a bill in equity against a former

TAYLOR, &c.
vs
TAYLOR'S EX'R.

guardian for an
account and set-
tlement. The
Chancellor will
decree in favor of
the person ap-
pearing to have
the *right*.

Heirs of a for-
mer guardian are
not necessary
parties to a bill
by subsequent
guardian and
ward against
former guardian,
executor and
sureties for a
settlement, &c.

an action for it on the former guardian's bond. But we perceive no impropriety in his uniting with his ward as guardian, in a bill claiming the estate from her former guardian; nor do we admit that if a stranger, having no interest in the subject, were united as co-complainant, this should either prevent a decree in favor of the party having right, or reverse a joint decree, and especially when there was no demurrer, and so far as appears, no objection on this point in the Court below.

The second cross error alledges the want of proper parties. But the heirs of the former guardian and the other persons referred to, are not necessary parties as to any relief sought against the executor or the sureties as such. And as they are directly liable, it is they and not the complainants who may have to resort to the mortgage or its proceeds for indemnity, and who should, therefore, if they deemed it necessary, bring the heirs of the mortgagor and other parties interested in the mortgage, before the Court. It is true the decree as rendered, throws the complainants upon the remnant of the mortgage, or its proceeds, as their only resource, and gives them but a *pro rata* distribution of its proceeds remaining after satisfying the preferred creditors. But this was only the third alternative prayer of their bill, and the reversal of the decree upon their writ of error will place them on better ground. They may, if they choose, upon the return of the cause take a decree against the parties liable to them, leaving the executor to appropriate the proceeds of the mortgage to his own relief, which he may do under his responsibility to the parties concerned.

The complainants have in fact brought the mortgagee, of whom the executor is one, before the Court, and also all the creditors who are prefered to the sureties, and there is but one other person named in the mortgage as being preferred. The general creditors are not named. The executor in his answer refers to suits pending between the parties named in the mortgage for the adjustment of their respective claims, all of which are incorperated into the present record. And he names the only remaining creditors known to him, and the several sums due to them. All these matters were referred to a Commission-

Taylor, &c.
*vs*
Taylor's ex'r.

er who ascertained the balance remaining from the proceeds of the mortgage, after satisfying all the preferred creditors, upon the assumption that the sureties in the guardian's bond, were not liable for the land sold by the guardian, and were, therefore, not entitled as sureties to any benefit of the mortgage to which the complainants could be substituted. And the decree distributes the balance between the complainants and the general creditors, named by the executor. These general creditors have not complained, nor is it shown that any injustice was done to them, and we think the other parties have no right to object on their behalf.

It appears, however, from the Commissioner's report, that he had ascertained that an interest of one twelfth part of a house and lot in Richmond, which belonged to William C. Taylor, the mortgagor and former guardian, remained unsold. And the decree, after distributing the proceeds of the mortgage remaining in the hands of the executor, goes on to direct a sale of Taylor's interest in said house and lot, which was made accordingly, and $50 dollars the reported proceeds, was directed to be collected and distributed by the Commissioner in the same proportions as in the principal decree. Whether this lot was included in the mortgage or not, the heirs of Taylor now appear to have been necessary parties to the sale. As there is no will of Taylor in this record, and as they were not before the Court, they are not bound by the decree. But there was no objection to the sale, either before or after it was made, and the purchaser is no party here. This Court cannot set aside the sale, which according to the principles of this opinion, will operate the relief of the sureties. The distribution of the proceeds will be reversed with the residue of the decree, and we do not see that any further correction can be made upon the cross errors.

The complaint that the decree gives too much to the complainants is not well founded, and the question of costs has already been disposed of.

It has been contended in argument though not pointed out in the assignment of errors, that the other parties who joined in the petition for the sale of the land should have

It is no object to a decree behalf of one several infa against the gu

TAYLOR, &c.
vs
TAYLOR'S EX'R,

dian, that others have not been made parties, when the petition for sale and the settlement of the guardian both show the extent of the interest of complainant, & there has been long acquiescence, especially as the assignment of errors does not embrace the error supposed.

been made defendants, for the due ascertainment of the interest of the complainant, L. A. Taylor, in the proceeds. But her interest is sufficiently ascertained for the purpose of the present suit, by the report of the Commissioner in the petition case, by his settlements as guardian, by the long acquiescence of the other parties, and by the absence of any suggestion in the pleadings in the present suit, that they have not long since been satisfied. We perceive no necessity for bringing them into this case.

It is proper to remark further that we are not to be understood as intimating any opinion as to the validity or invalidity of the sale under the petition, but only that the executor and sureties of the guardian cannot relieve themselves from responsibility by alledging its invalidity, and especially while the actual parties to the sale do not impeach it.

Wherefore, the entire decree, except so far as it ascertains the sum due to the complainant Taylor, from her former guardian, is reversed, and the cause is remanded, with directions to render a decree for said sum and the costs, against the executor of the former guardian, to be paid out of assetts, and against the sureties *de bonis propriis*, and to be paid to the complainant, Harris, as guardian of the complainant Taylor. The proceeds of the mortgage in the hands of the executor are left to such disposition as he may make of them under his proper responsibilities, or such as the Court may direct on proper application. The proceeds of the sale ordered by the Court, if remaining in the hands of the commissioner, are to be subject to a like disposition, but so far as paid over to the complainants to be credited on the sum decreed, which will in fact be an appropriation of the proceeds to the benefit of the sureties, who should, therefore, refund to the purchaser of the lot in Richmond, if he should lose the benefit of his purchase. The question as to the validity of that sale is left open to such appropriate proceeding touching the same as may be instituted by the parties interested.

The plaintiffs in the writ of error are entitled to their costs in this Court.

*Caperton and Goodloe* for pl'tiffs : *Turner* for def'ts.