[No. 1072. Decided March 30, 1894.]

CARMI DIBBLE, *Respondent*, v. JAMES P. DeMATTOS, *Appellant*.

ACTION FOR MONEY HAD AND RECEIVED — SUFFICIENCY OF EVIDENCE — STATUTE OF FRAUDS — DEBT OF ANOTHER.

In an action for money had and received there is sufficient evidence to sustain a verdict of the jury in favor of plaintiff, when the testimony shows that plaintiff expended money in payment of laborers upon defendant's building upon the promise of defendant that it should be refunded, although the testimony also shows that plaintiff was one of the sureties upon the bond of a defaulting contractor, who had absconded, leaving due to the laborers upon defendant's building the amount of money so paid out by plaintiff. (HOYT and STILES, JJ., dissent.)

Where a contractor upon a building has absconded, leaving unpaid labor bills, the promise of the owner of the building to a third party that, if he would pay the money due so the work could progress at once, the money should be refunded, is not a promise to answer for the debt of another, and does not therefore fall within the statute of frauds.

*Appeal from Superior Court, Whatcom County.*

*Bruce & Brown*, for appellant.

*Dorr, Hadley & Hadley*, for respondent.

The opinion of the court was delivered by

DUNBAR, C. J.—This is an action by the respondent against the appellant to recover the sum of $986.33, together with interest thereon from the 15th day of August, 1890, for money alleged to have been paid by the said respondent to and for the use of said appellant. The answer is a general denial. At the close of the testimony on the part of the plaintiff, defendant moved for a non-suit, which motion was overruled. The trial proceeded and the jury returned a verdict in favor of the plaintiff for the sum demanded, upon which judgment was rendered, and from such judgment is prosecuted this appeal.

It is earnestly contended that the court erred in not granting appellant's motion for a non-suit, and that if respondent proved any cause of action at all, the proof was a fatal variance from the allegations in the complaint; that the action was based upon a contract, and that the evidence, if it proved any case at all, proved an action in tort. It is insisted that the case falls within the rule laid down by this court in *Distler v. Dabney,* 3 Wash. 200 (28 Pac. 335), and *Clark v. Sherman,* 5 Wash. 681 (32 Pac. 771). This contention, it seems to us, is not sustained by the record in this case. In *Distler v. Dabney* it was decided that—

"Under the provisions of the code abolishing all forms of pleading inconsistent therewith and requiring the complaint to contain a plain and concise statement of facts constituting the cause of action, an action for money had and received is not supported by proof that plaintiff had paid defendant certain sums of money upon a written contract for the conveyance of land, which had been rescinded by the plaintiff on the ground that defendant had failed to deliver a deed to said land within the time prescribed by the contract."

In that case the ground of action set forth in the complaint was totally abandoned and the plaintiff sought to recover on the allegations of his reply, which showed an entirely different and distinct cause of action. *Clark v. Sherman, supra,* was substantially the same kind of a case, the court holding that a plaintiff could not allege one cause of action in his complaint, and then, by means of a reply, recover upon an entirely different cause of action.

But in this case the allegation of the complaint is that the money was paid at the special instance and request of the defendant and for his use and benefit, and it seems to us that if the testimony of the respondent is found to be true, he has directly proved this cause of action. Appellant's motion for a non-suit was based upon the same theory. But it appears to us that there is sufficient evi-

dence offered by the respondent, if believed by the jury, to sustain the verdict, and to entitle respondent to the judgment which he obtained.

Of course, the case was tried by appellant on the theory that the money which was paid by the respondent was paid by him as bondsman of Jordan, the defaulting contractor. But such is not the testimony of the respondent. Respondent Dibble testifies that in the conversation with DeMattos, DeMattos told him to go on and pay the men; that there was enough money to pay for the building and he (meaning DeMattos) would pay the money before he would have the work stopped. In answer to the question, " What, if anything, was said about the repayment of this money to you?" the witness testified, "He said that there was enough to complete that building and more, too, and that all the bills were paid up to that time, and to pay the men and it would be refunded." This contention he stoutly maintained through both his direct and his cross-examination, and in spite of the attempt of the attorney for the appellant to make it appear that he paid the money on the strength of his being a bondsman for Jordan. He stated that DeMattos told him to go ahead and pay off the men and that the money was ready to repay him. The following excerpt from the testimony shows conclusively what the theory of the witness was in regard to the transaction:

"Q. (On cross examination.) He told you if you gentlemen would finish the building he would pay you what still remained unpaid? A. No, sir.

"Q. You swore that on the trial before. A. You show it up if you can.

"Q. Didn't you testify before that what DeMattos said to you was that if you gentlemen would go on and complete the building he would pay the money that was yet in his hands? A. No, sir; I did not.

"Q. And that he had money enough he thought to complete the building? A. No, sir; get in and show that evidence.

"Q. I will ask you, Mr. Dibble, if these men whom you paid off were not men who worked on that building for you as bondsmen?    A. No, sir.

"Q. And you didn't so swear when the case was before the court before?    A. No, sir; these men were paid for services, for work done before I ever went there.

"Q. Didn't you hire these men yourself?    A. No, sir.

"Q. Hire them subsequent to that time?    A. No, sir; I never hired those men.    DeMattos said to pay those men off."

He also testified that the money that was paid was paid for work that was done before he had this conversation with DeMattos.    The testimony of H. A. White is also directly to this point, and as positive as it can well be.    When instructed to state what was said about paying off these men, his answer was: "He said to pay these men off; to pay them off and he would give it back again."    Again, in cross examination, he states that DeMattos said that the architect had made very low estimates so that there was plenty of money to finish the building; and that he told Mr. Dibble if he would pay the money, he would pay him back.

That the effect of the witness' testimony was well understood by appellant's counsel is shown by the following question in cross examination:

"Didn't you think it a little strange that DeMattos wanted him to pay that money when DeMattos intended to repay him out of money on hand?    A. I don't remember that I did."

Witness Charles Broah also testified as follows:

"I don't remember whether or not Dibble said he would pay the money over, but at any rate the judge said if they would pay the money he would pay them back; pay the men so that the work would go on.

"Q. To whom did he say that?    A. I believe to Dibble there."

35—8 WASH.

Then appellant's counsel undertook to construe witness' testimony as follows:

"Q. What he said to Dibble at that time was that there was money enough on hand he thought, and if they would go to work, that is Dibble and the bondsmen, and complete the building, that he would pay them the money remaining in his hands? A. I didn't understand it in that way."

And after further cross examination, the witness finally made the broad statement as follows: "He said, 'If you pay the bills I will pay you back.'"

There was other testimony to the same effect by other witnesses, so that it is plain that the court would not have been justified in taking the case from the jury, as there certainly had been sufficient testimony to establish the fact that the appellant had told the respondent to pay the workmen and that he would refund the money, or, in other words, as a witness states it, "pay him back." And if that be true, and there was sufficient testimony upon which to base a judgment, if uncontradicted, then the verdict of the jury will not be disturbed; for it is their especial province to weigh the testimony. Whatever this court might think of the probabilities or improbabilities of the truthfulness of the statements related by the witnesses, and the reasonableness or unreasonableness of their statements, can have little effect.

It is true that the testimony of the appellant flatly contradicts the testimony furnished by the respondent on this material point, but the jury was the judge of the credibility of the witnesses. They saw fit to believe the testimony of the respondent, and rendered their verdict accordingly, and if the testimony was legally submitted, under proper instructions by the court, it will not be disturbed here.

It is contended by the appellant that, conceding the statement of the respondent to be true, it was a promise to answer for the debt or default of another, and conse-

quently fell within the statute of frauds, being a verbal
promise.   But, as we understand the testimony, it was in
no sense a promise to answer for the debt of another, but
an original contract or undertaking entered into by the
appellant, with the respondent, for the benefit of the ap-
pellant, and the testimony shows that the consideration
supporting the promise was the benefits accruing to appel-
lant by reason of the work on his house being continued. ·

We have carefully examined the instructions of the court
and are satisfied that as a whole they state the law gov-
erning the case correctly, and that all the instructions
which were necessary and proper for the guidance of the
jury in determining their verdict were given by the court.

The case, it seems to us, is a simple question of fact.
If DeMattos made the statements to Dibble that are at-
tributed to him by Dibble and other witnesses introduced
by the respondent, he is responsible for the amount claimed
by the complaint; and that he did make such statements
the jury must have concluded, and they have rendered
their verdict accordingly.

The judgment will be affirmed.

ANDERS and SCOTT, JJ., concur.


HOYT, J. (*dissenting*). — In my opinion plaintiff's own
testimony, and that of his witnesses, when interpreted in
the light of all the surrounding circumstances, failed to
show any such promise on the part of the defendant as
that upon which the complaint was founded.   Such testi-
mony, when so interpreted, shows that any statement as
to the repayment of the moneys which the plaintiff should
advance to the men who had been employed upon the
building, and for which this action is brought, was made
in view of its being taken from the amount which would
be coming to the contractor or his bondsmen upon the
completion of the buildings in accordance with the terms

of the contract. Plaintiff's own testimony is to the effect that that was one of the things which were discussed during the interview when it was alleged the promise was made, and that prior to such alleged promise the defendant had stated that there was enough money unpaid upon the contract to complete the building, and that it was after such statement that defendant said what he did about the repayment of the money which the plaintiff should advance to the men to induce them to remain upon the work. Interpreting the alleged statement of the defendant in the light of the subject matter under consideration, there is not enough shown thereby to authorize a finding by the jury of an absolute promise to pay. The most that could be found therefrom was a promise to pay if the work on the building was continued to completion by or on behalf of the contractor or his bondsmen. To my mind there was nothing said in the entire conversation that tended to show that it was intended on the part of the owner to relieve the bondsmen from their responsibility or on their part to be relieved.

It follows that if any liability was established as against the defendant it was one sounding in tort, and not upon contract, and could not have been recovered for under the complaint in this action. I think that the judgment should be reversed.

STILES, J. (*dissenting*).—There ought to have been a non-suit as soon as it developed that the parties had a contract of suretyship between them. If respondent was a bondsman for Jordan, and Jordan abandoned the building, leaving bills unpaid, it became respondent's obligation to pay them off before he could demand any unpaid contract money from appellant. Therefore, being under such an obligation, it is wholly immaterial whether appellant promised to repay or not, the promise was void, and what may

or may not have been the facts makes no difference.    The plaintiff ought to have been relegated to a suit based upon his rights under the bond.    As it is, he has now been allowed to repudiate the bond *pro tanto*, without any consideration of its merits as a binding obligation.