[No. 1727.    Decided October 9, 1896.]

# JAMES ·P. DE MATTOS, *Appellant*, v. R. C. JORDAN *et al.*, *Respondents*.

PRINCIPAL AND SURETY — BOND OF BUILDING CONTRACTOR — RELEASE OF SURETIES — RES JUDICATA — INSTRUCTIONS — DAMAGES.

The fact that, at the date a building contract bond was executed, the contractor had some men upon the premises engaged in work preparatory to the erection of the building, does not show a want of consideration for the bond, when there is no evidence showing that the contractor was in possession of the premises by direction or request of the owner, or that the giving of the bond was not an inducement to the signing of the contract on the part of the owner.

Sureties upon a building contractor's bond are not discharged by deviations from the specifications in the construction of the building, nor even by material alterations, when the contract itself permits such alterations.

Where a building contractor was to be paid monthly, as the work progressed, upon the supervising architect's estimate of the amount of work completed, the fact that the owner accepts an order from the contractor in favor of a material man and agrees to pay same, on the day the estimate becomes due, paying at the time in cash, however, a small percentage of the claim to accommodate the material man, does not constitute such a payment in advance as will release the sureties upon the contractor's bond.

Sureties upon a building contractor's bond are not entitled to be discharged because their principal was forced to pay his debts, by the acts of the obligee, as an attorney, in securing the collection of claims due from the principal out of moneys payable to him on the building contract.

The fact that the contractor was compelled, by the person with whom he had contracted for the erection of a building, to pay his debts due to other parties, would not constitute a valid excuse for his abandoning his contract.

In a suit upon a contractor's bond the defense of *res judicata* cannot be set up by reason of the fact that in a prior action one of the sureties had recovered judgment against the obligee for moneys advanced to pay laborers upon the obligee's promise to refund.

The plea of *res judicata* is not available as a defense where the parties to the action are not the same as in the one in which the judgment sought to be set up was rendered.

· A charge to the jury that the burden was on plaintiff to show what amount of damage he had suffered by reason of the failure of the contractor to complete the building in the time fixed by the contract and that they should allow him such amount as they found was established by the evidence, is not erroneous, when plaintiff has not specifically requested the court's construction as to whether the amount of damages for each day's delay was liquidated and fixed by the parties in their contract.

Although the owner who has been obliged to complete the construction of a building himself by reason of the abandonment of the contract by the contractor may be entitled to recover against the sureties upon the latter's bond, he can only recover for such of his expenses incurred for finishing the work as shall have been audited and certified by the architect, when the contract itself provides that the expenses incurred for materials and labor should be audited by the architect and that his certificate should be conclusive upon the parties.

Appeal from Superior Court, Whatcom County.— HON. JOHN R. WINN, Judge. Reversed.

*Kerr & McCord,* and *Bruce, Brown & Cleveland,* for appellant.

*Dorr, Hadley & Hadley, Fairchild & Rawson,* and *Black & Leaming,* for respondents.

The opinion of the court was delivered by

ANDERS, J.— On April 30, 1890, the plaintiff entered into a contract with defendant Jordan whereby the latter agreed to furnish all material and to erect for the former, in the city of New Whatcom, a three-story and basement brick and stone building, in accordance with plans and specifications prepared by one W. A. Ritchie, supervising architect, and which were made a part of the contract. By the terms of the contract, the building was to be completed on or before August 30, and in default thereof the said contractor agreed to pay the owner $50 as and for liquidated damages for every day that the work should

remain unfinished. The plaintiff agreed to pay to the contractor Jordan for the material and labor furnished, and the doing and completing of the work, the sum of $23,659, good and lawful money of the United States, subject to additions or deductions on account of alterations, modifications or additions as provided for in the contract, payments to be made upon estimates on the first Tuesday of each month, covering all materials furnished and labor performed on the work during the month preceding, as computed by the architect, less twenty per cent. of the valuation of the work completed, and as certified by the architect, which was to be paid at the expiration of ten days after the completion and final acceptance of the work and the building. The contract provides that the contractor shall perform any work required in alteration, modification or addition, which the architect and owner shall demand as the work progresses, upon receiving written authority from the architect, approved by the owner, specifying the kinds and qualities, and in every such case the price for such alterations, modifications and additions must be agreed upon and a fair and reasonable valuation of the work shall be added to or be deducted from this contract price, and should any differences arise between the parties hereto respecting such valuation the same shall be decided by three experts, etc. And the specifications provide that no bills for extra work shall be allowed unless the same had been authorized by the owner and the architect. It is also stipulated in the contract that in case the contractor should not complete the building, the owner may do so and charge the expense to the contractor, and "the expense incurred by the owner as herein provided, either for furnishing materials or for finishing the

work, shall be audited and certified by the architect, and his certificate thereof shall be conclusive upon the parties." Another stipulation in the contract was that should the architect, prior to each payment receive notice from any person or persons that they held a claim against the said building for material or labor chargeable to the contractor, for which, if established, the owner might be made liable, the owner should have the right to retain out of the payment then due, or thereafter to become due, an amount in addition to the twenty per cent. retained sufficient to indemnify him against such claims until the same should be actually satisfied and receipts in full for the same have been furnished by the contractor.

To secure the faithful performance of this contract the defendant Jordan, as principal, and the other defendants as sureties, executed to the plaintiff their joint and several bond in the sum of $20,000, conditioned to be void, "if the said R. C. Jordan shall well and truly perform the said contract and shall erect and complete the said building in accordance with the said drawings, plans and specifications and the terms and conditions of that certain contract, and within the time therein mentioned, and shall pay all laborers, mechanics, material-men and persons who shall supply the said contractor with any materials, goods or labor of any kind, all just debts due or thereafter to become due such persons, incurred in carrying on this work."

Jordan entered upon the performance of the contract, but on August 7, 1890, he abandoned the work and absconded, leaving the building but partially constructed. The sureties having declined to finish the building at the request of the plaintiff, and having

notified the plaintiff that they denied and disclaimed all liability upon the bond for damage sustained through the failure of their principal Jordan to perform the conditions of his contract, plaintiff himself caused the building to be completed and subsequently brought this action upon the bond to recover the amount alleged to have been necessarily paid in excess of the contract price in finishing the building and for labor performed and materials furnished on account of the contractor; the amount of mechanics' and laborers' liens established against the building, and the damages caused by the failure of the contractor to complete the structure within the time limited by the contract.

The defendants filed separate answers, and the sureties defended on the alleged grounds that there was no consideration for the execution of the bond in controversy; that material changes were made and permitted by plaintiff in the building at an additional cost and in a manner not authorized by the contract, and without their knowledge or consent; that the plaintiff violated the conditions of the contract on his part by making payments in advance and without the certificate of the architect, and by compelling Jordan to accept as payments his own obligations whereby he was forced to abandon the work, (which latter defense was also interposed by Jordan); and that the questions involved in this action are *res judicata,* especially as to defendant Dibble.

The cause was tried to a jury and a general verdict was returned in favor of the defendants, and the jury also made and returned special findings upon certain questions of fact which were submitted to them by the court, at the instance of the defendants. A motion for a new trial was made and denied, after which judg-

ment was rendered for the defendants upon the verdict, and the plaintiff appealed.

The facts found by the jury were that under the plans, specifications and contract the piers between the arches on Holly street and on Elk street were to be built of brick, but were constructed of stone; that the inner basement walls were to be of brick and the first twenty-four inches were of stone and the remainder of brick; that the height of the third story, as designated on the plans and specifications, was eleven feet ten inches, but as constructed was twelve feet two inches; that the third story was completed by appellant; that changes were made in the time, manner and form of payments by paying in advance of estimates and by paying in depreciated paper, and that the change from brick to stone in the construction of piers increased the cost of the building in the sum of $335. No other special findings of facts were made or requested. The modifications or changes in the construction of the basement walls and of the piers occurred while the work was in charge of the contractor, but the change in the height of the ceiling of the third story was made after the abandonment of the contract by Jordan, and during the time when appellant was in charge of the construction.

Although the bond in question was dated May 1, it appears from the notarial certificate attached thereto that it was not acknowledged until the 8th of that month, and there is some evidence tending to show that it was not executed until the date last mentioned, and that at that time Jordan had some men upon the premises designated in the contract engaged in work preparatory to the erection of the building. Upon this evidence is based the claim of respondents that there was no consideration for the bond. This posi-

tion is not tenable. We find nothing in the evidence showing that Jordan was in possession of the premises by direction or request of appellant, or that the giving of the bond was not an inducement to the signing of the contract on the part of the appellant. On the contrary, it fairly appears from the testimony of appellant, which is not contradicted, that it was understood and intended that a bond should be given to secure the performance of the contract, and that, in fact, the contract was executed in duplicate and the duplicate copy which Jordan received was delivered to him at the time he delivered his bond to appellant That being so, it cannot be said that the bond was executed without consideration.

There is no evidence tending to prove, and in fact it is not claimed, that there was any alteration of the plans and specifications as originally prepared. The changes which were made were mere deviations from them as the work progressed. Some other changes were made besides those mentioned in the special findings of the jury, while Jordan was directing the work. The height of the first story ceiling was diminished some two inches; two mantles were changed from wood to marble, and some other less material changes and modifications were also made.

Appellant contends (1) that these changes are, as matter of law, wholly immaterial, and that the court erred in submitting the defense based thereon to the jury; (2) that if material, the court erred in refusing to instruct the jury as requested by appellant, that if any changes were made it would be their duty to determine from the evidence the cost thereof and to deduct from or add the cost of the same to the contract price and render their verdict accordingly; and (3), that these changes were fully provided for by the

terms of the contract, and there being no evidence to the contrary, the presumption of law was that they were made without in any manner affecting the contract price.

We have no doubt that the changes were material; nor that just such changes were contemplated by the contract, and, if they were made in accordance with it it follows that the instruction requested was right, and should have been given to the jury. Appellant testifies that the changes which were made while Jordan had control of the work were made without his knowledge or consent, and it is claimed on his behalf that Jordan thereby violated his contract and the sureties, if any one, are responsible therefor. On the other hand, the respondents insist that the supervising architect authorized the contractor to make the changes and that he and appellant ratified the same, the former by making and certifying his estimates to the contractor and the latter by paying such estimates. But the mere fact that appellant paid the estimates of the architect would not constitute a ratification of the acts of the architect or contractor unless at the time he had knowledge of those acts. Ratification always presupposes knowledge of the acts claimed to be ratified. By a provision of the contract the contractor was obliged, upon receiving written authority from the architect approved by the owner, to perform any work demanded by the owner and architect in the alteration, modification or addition, and it would therefore appear that without the approval of the owner the architect's authority would not justify the contractor in deviating from the plans and specifications. Moreover, this provision was for the benefit of appellant, and to protect him against unauthorized bills for extra work, and it affected the contractor only

25—15 WASH.

in so far that he could collect nothing for additional work not authorized as provided by the agreement

But it is also claimed that appellant violated the contract by changing the height of the ceiling in the third story, and by omitting base mouldings called for by the plans and specifications, and by changing the glass in the inside doors and windows throughout the building from " obscure " or frosted to clear. But as the contractor, if he had not abandoned his contract, would have been obliged, under its terms, to make these changes at the request of the owner, we see no reason why the owner could not himself do the same thing after he undertook to finish the building in accordance with an express provision of the contract. All of the changes which were made in the progress of the work and which are here complained of were mere deviations from the specifications, and, as we have observed, were amply provided for by the contract, and therefore the making of them did not have the effect to discharge the sureties from their obligations on the bond. See: _Dorsey v. McGee_, 30 Neb. 657 (46 N. W. 1018); _Hayden v. Cook_, 34 Neb. 670 (52 N. W. 165); _McLennan v. Wellington_, 48 Kan. 756 (30 Pac. 183); _Howard County v. Baker_, 119 Mo. 397 (24 S. W. 200); _Ashenbroedel Club v. Finlay_, 53 Mo. App. 256.

And that being so, the instruction of the court to the jury on this branch of the case was, to say the least, misleading. The jury were charged that if such changes were made with the knowledge and consent of De Mattos and were material changes, and he failed to follow the plans and specifications so as to make it a different building, and did this contrary to the fifth paragraph of the contract, and had full knowledge of it, then he did not follow the conditions of the con-

tract set up, and he would be held to make a breach of the contract himself; otherwise he would not. And also, that "if you should find in this case . . . that the building erected was changed upon an understanding between Jordan and De Mattos so that it was not the building contemplated by the parties, or the parts therein changed were not as contemplated by the parties under their contract, viewed in the light of the surroundings, then I instruct you that such a change would be material and substantial change, and the sureties would be discharged from any responsibility." It was the province of the court, and not of the jury, to construe the contract and determine what deviations from the plans and specifications were therein provided for; and, on the other hand, it was the sole province of the jury to determine what changes or deviations were actually made. But, under the instruction given, the jury might have deemed themselves at liberty to find for the defendants if, in their opinion, material changes were made with the knowledge and consent of plaintiff, or the plaintiff failed to follow the plans and specifications so as to make a different building from that contemplated by the contracting parties, or the parts changed were not as contemplated by the parties under the contract.

It cannot, we think, justly be said that the building erected was different from the one contemplated by the parties to the contract. In size, shape and internal arrangement it is in every respect in conformity with the contract and plans, and the fact that the deviations from the specifications were material can have no effect upon the obligations of the sureties, for the reason that material changes were provided for in the contract of their principal. The fact that the cost of alterations, modifications and additions was to

be added to, or deducted from, the contract price clearly shows that the changes provided for were not understood to be merely immaterial changes.

It is not claimed by respondents that appellant did not pay the contractor the whole amount due him under the terms of the contract, but they contend that the sureties are discharged for the alleged reason that appellant violated the contract by paying in advance and by paying in depreciated paper, and not in good and lawful money of the United States. It appears from the evidence that the contractor Jordan purchased a lot of brick from the agent of the Elliott Brick Company, during the month of June, which he did not pay for, but gave the seller an order on appellant for the amount due, $1,672, requesting him to charge the same to the account of the payment falling due on the next succeeding estimate. Appellant accepted the order for $1,572, payable July 1st, the day on which the estimate was due, and, as he says, to accommodate the brick man, paid him $100, the balance of the order. The estimate was duly made, and the amount of the order deducted therefrom, and the balance, some $3,800, was paid to the contractor. Did this transaction amount to making payment in advance of the estimate? Clearly not. It was not an advancement of any sum whatever to Jordan, and was not intended by him to be such, but was simply a request by him to pay the drawee, out of whatever sum might be due from appellant on the next estimate, an amount which he, Jordan, was obligated by his contract to pay for material furnished. See *Bell v. Paul,* 35 Neb. 240 (52 N. W. 1110).

Appellant, at the request of Jordan and with the approval of the architect, also paid for some eye-beams which had been ordered from Pennsylvania, and

which were in the possession of the railroad company, and without which work could not proceed. But, under the circumstances, and in view of the provisions of the contract, the sureties had no ground of complaint on that account. The amount so paid was applied on an estimate actually made, and neither that, nor any other supposed advancement disclosed by the record, violated the contract or released the sureties from their obligation. See *Benjamin v. Hillard*, 23 How. 149.

In regard to the claim of respondents that appellant violated the contract in making payment in depreciated paper, the evidence discloses that appellant, who is an attorney had, before the making of the contract in question, received some claims in the form of promissory notes against Jordan for collection, and upon which he threatened to sue if they were not paid. These claims were finally compromised and paid by Jordan in cash, except the amount of fees which appellant was entitled to deduct therefrom. Appellant's charges, amounting to $130, were, by an arrangement with Jordan, subsequently paid out of the sums due on estimates of the architect. In addition to the claims above mentioned appellant received for collection a judgment against Jordan. This claim was also compromised, and Jordan agreed that the amount to be paid ($360) in full satisfaction thereof, might be deducted from the sum that would be due from appellant on the architect's estimate of September 2d following. Before that estimate became due, however, Jordan absconded, and nothing was ever paid by him on the judgment, or charged to his account by appellant. It will be seen from what we have stated that appellant did not pay Jordan in depreciated paper, or any other kind of paper. He

owned none of these claims against Jordan and did not pretend to own them. The $130 paid by Jordan out of the estimates was due to Jordan's own creditors, appellant's clients, and was in fact paid to them. He owed appellant nothing and paid him nothing.

The question then is reduced to this, Are the respondents entitled to be discharged because appellant, as an attorney, was instrumental in causing their principal to pay his debts? We think there can be but one answer to this question, and that is, that they are not. In fact they would not have been discharged even if appellant had owned these notes and obligations, and Jordan had agreed to accept them as payment instead of money. See *Foster v. Gaston*, 123 Ind. 96 (23 N. E. 1092).

Moreover, the fact that Jordan was compelled, if he was compelled, to pay these debts, constituted no valid excuse for his abandoning his contract, and therefore it was error to instruct the jury that if Jordan was forced against his will to pay off other notes and contracts which he had obligated himself to pay, and was forced against his will to accept such as payments, and that was the cause of his giving up the contract, then that was a breach on the part of appellant, and no recovery could be had against the sureties.

It appears that after Jordan abandoned the work, Mr. Dibble, one of the defendants and sureties, paid a considerable sum of money to laborers employed by Jordan, and which was due them for labor performed on the building. Mr. Dibble subsequently sued appellant for the recovery of the amount so paid, and alleged in his complaint that the same was made at the request and for the use of appellant. Appellant's answer consisted of a general denial merely, and

under it he, of course, had a right to prove any fact or facts which directly controverted any material allegation of the complaint. Upon the trial he did not attempt to disprove payment by Dibble, but undertook to prove that such payment was not made at his request, but voluntarily and because Dibble was a bondsman of Jordan. The trial resulted in a verdict and judgment for Mr. Dibble, and the judgment was affirmed, on appeal, by this court. See *Dibble v. DeMattos*, 8 Wash. 542 (36 Pac. 485). The amount of this judgment, which it is alleged is a lien upon appellant's building, is one of the items of damages sought to be recovered in this action; but the learned counsel for respondents insist not only that appellant is not entitled to recover the amount of that judgment, or any part thereof, but that he is estopped by the judgment from maintaining this action, for the alleged reason that the identical questions in issue here were involved in the action in which the judgment was rendered and were decided adversely to appellant.

We are unable to assent to this proposition. That Jordan had violated his contract with appellant, and that Dibble was one of the sureties on his bond, were facts which were not disputed or questioned on the trial of that action, and the question whether Dibble was in fact liable to appellant on his bond was not in issue and was not determined. The only question litigated and determined was whether Dibble paid the money for the recovery of which the action was instituted at the request and for the use of appellant. It is true that appellant, as corroborative of his own testimony that he did not request Dibble to pay the money for him and did not promise to re-pay it, and that Dibble was to be repaid, if at all, out of any

money that might be due to the contractor or sureties after the completion of the building, introduced evidence showing that Dibble was one of the contractor's sureties and that the contractor had failed to perform his contract. But we are not to conclude from that evidence that the jury must have determined that Dibble was not liable on his bond.

But there is another reason why the judgment in *Dibble v. DeMattos* ought not to estop appellant from maintaining this action, and that is, that the parties to this action are not the same. 1 Freeman, Judgments (4th ed.), §161; 21 Am. & Eng. Enc. Law, p. 227.

If appellant had himself paid the bills due from Jordan for labor, which Dibble paid, there is no question but that he could have recovered the amount thereof from the respondents; and that being so, we perceive no reason why he should not recover the sum paid by Dibble for him, after refunding the sum so advanced.

The court charged the jury in substance that the burden was on the plaintiff to show what amount of damages he had suffered by reason of the failure of the contractor to complete the building in the time fixed by the contract, and that they should allow him such amount as they found was established by the evidence. We see no valid objection to this instruction. If appellant desired to have the court's construction of the contract as to whether the amount of damages for each day's delay was therein liquidated and fixed by the parties, he should have specifically requested it.

In view of the fact that a new trial must be awarded, we deem it proper to observe that appellant can, under the terms of the contract, only recover such of the expenses incurred by him for furnishing materials or

finishing the work as shall have been audited and cer-
tified by the architect. No estimates of the architect
were required after the contractor abandoned his con-
tract, but it was explicitly agreed that the expenses
incurred by the owner for materials and labor should
be audited and certified by the architect and that his
certificate should be conclusive upon the parties. The
purpose of this provision was to protect the sureties
against excessive and unjust charges for work and
material, and it was agreed that the certificate of the
architect should be conclusive as to the amount of ex-
penses incurred by the owner. It is evident that in
no event can appellant recover more than the amount
of damage he has sustained by reason of the default
of the contractor.

The judgment is reversed and the cause remanded
for a new trial in accordance with this opinion.

HOYT, C. J., and DUNBAR, J., concur.