### McMULLEN et al. v. UNITED STATES.†

(Circuit Court of Appeals, Ninth Circuit. February 1, 1909.)

#### No. 1,642.

**1. PRINCIPAL AND SURETY (§ 99*)—SCOPE AND EXTENT OF SURETY'S LIABILITY—CONSTRUCTION OF CONTRACT.**

The contract of a surety, like any other contract, is to be construed according to the intent of the parties; but, it being determined what is the meaning of the contract, the sureties are entitled to stand on its very terms, and if they have not consented to any variation of it, and variation is made, it is fatal.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 158–161; Dec. Dig. § 99.*]

**2. PRINCIPAL AND SURETY (§ 128*)—DISCHARGE OF SURETY—ALTERATIONS IN CONTRACT.**

If, in a contract for the performance of work on the construction of a building or other improvement, it is provided that in the course of the work one of the parties shall have the right to make certain specified changes therein, the sureties for the contractor are deemed to assent in advance to the making of such alterations, and if they are made, although they may materially vary the contract, the sureties are not thereby released.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 356–360; Dec. Dig. § 128.*

Discharge of surety by alteration of instrument, see note to Zeigler v. Hallahan, 66 C. C. A. 6.]

**3. PRINCIPAL AND SURETY (§ 104*)—DISCHARGE OF SURETY—EXTENSION OF TIME TO PRINCIPAL.**

A contract for government work which in terms gave the contractor the right under certain circumstances to apply for an extension of time for completion of the work, but left it optional with the government to grant or refuse it, by such provision added nothing to the rights of the parties, and cannot be said to have provided for an extension, and the contractors' sureties were discharged by an extension made without their consent.

[Ed. Note.—For other cases, see Principal and Surety, Dec. Dig. § 104.*]

In Error to the Circuit Court of the United States for the Northern District of California.

On or about September 14, 1897, the Navy Department of the United States advertised for proposals for dredging at the United States naval station at Port Royal, S. C. The New York Dredging Company sent a bid which was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

† Rehearing denied February 23, 1909.

accepted, and on October 25, 1897, a contract in writing was executed by that company as principal and John McMullen and R. Percy Wright as sureties, parties of the first part, and the United States of America, party of the second part. To the contract was annexed a bond in the sum of $30,000, with the New York Dredging Company as principal and John McMullen and R. Percy Wright as sureties, conditioned for the faithful performance of the contract. The plans and specifications on which the bids had been made were attached to the contract and made a part of it. The portions of the plans and specifications and bonds necessary to be considered on the writ of error are as follows:

"16. Time of commencement of work.—The contractor shall commence work within thirty days from the date of signing the contract and continue without interruption; the entire work to be completed in sixteen calendar months from date of contract.

"17. Progress of work.—If at the close of any working month the progress of the work shall not have been such as to indicate that it will be completed within the time specified in the contract, the government may refer the matter to a board of three officers, and if recommended by them, and the interests of the government so require, annul the contract and complete the work in such manner as it deems best, at the expense of the contractor and his sureties.

"18. Unavoidable delays.—When an unavoidable accident, storm, or other act of Providence occurs, through which the progress of the work is or seems likely to be delayed, the contractor shall immediately notify, in writing, the officer in charge of the occurrence in detail, and state in what way and to what extent it will delay the fulfillment of his contract, in order that the necessary investigation may be made, and the matter put on record. And it is clearly to be understood that unless it be done whenever such thing occurs, no subsequent application for an extension of time for the completion of the contract on account of such occurrence will be recommended.

"19. Avoidable delays.—Should the progress of the work be delayed by anything but unforeseen and unavoidable accidents, storms, or other acts of Providence, or by the action of the government, no application by the contractor for an extension of time for the completion of his contract will be recommended by the officer in charge for favorable consideration, except on condition that the contractor make good any deterioration caused by such delay and bear the additional cost of supervision and inspection by the government, and other expenses caused by the failure of the contractor to fulfill his contract with the United States according to its terms; and by granting the extension of time asked for there shall be reimbursed to the United States by the contractor the amount of such additional charges, to be deducted from any money that may be or may become due him from the United States under this contract, the difference only to be paid him upon his receipt.

"20. Authority for extension of time.—No extension of time for the completion of the work will be made except upon the authority of the Secretary of the Navy."

The condition of the bond was as follows:

"The condition of the above bond is such, that if the said above-bounden New York Dredging Company, their heirs, executors, or assigns, shall well and truly, and in a satisfactory manner, fulfill and perform the stipulations of the contract hereto annexed, entered into with the Chief of the Bureau of Yards and Docks, acting under the directions of the Secretary of the Navy, for and in behalf of the United States, and shall conform in all respects to said contract, and to the plans and specifications attached thereto and forming a part thereof, and to the satisfaction of the said Chief of the Bureau of Yards and Docks, and shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in the aforesaid contract, then this obligation to be void and of no effect; otherwise to remain in full force and virtue."

The New York Dredging Company began work under its contract, and encountered difficulty through striking rock. The work was also delayed by storms and accidents to machinery. Early in 1899, and before February 15th, it was ascertained by the government that only about one-third of the

dredging contracted for had been done. Two weeks then remained of the sixteen months in which the contract was to be completed. In response to a request from the dredging company, the time for the completion of the contract was extended to December 30, 1899. The dredging company failed to complete the contract within the time so extended. On March 25, 1901, the Chief of the Bureau of the Department of the Navy addressed a letter to the dredging company as principal, and to McMullen and Wright as sureties, stating that because of their failure to perform the contract of October 25, 1897, "the party of the second part, exercising the option reserved to them, declare said contract null and void, without prejudice to their right to recover for defaults therein or violation thereof," and notified them that an advertisement had been prepared and issued inviting proposals for the completion of the work under said contract, and that the same would be completed at the expense of the dredging company and the sureties. On December 5, 1903, the United States brought this action against the dredging company and the sureties to recover the sum of $25,588.02, alleged to be the difference between "what the defendant New York Dredging Company agreed to perform the work of dredging for, and what it actually cost these plaintiffs to complete the work," and for the further sum of $31,750 as liquidated damages. The answer of the sureties set up the defense, among others, that the contract entered into on October 25, 1897, was, by the terms thereof, to have been fulfilled by the dredging company and the work mentioned therein was to have been completed between February 23, 1897, and December 30, 1899; that the time was extended, and the condition of the contract was in that regard changed by the plaintiffs without the consent of said sureties. Upon the pleadings and an agreed statement of the facts, judgment was rendered for the defendant in error.

Burke Corbet, J. R. Selby, and Edward J. Lynch, for plaintiffs in error.

Robert T. Devlin, U. S. Atty., and George Clark, Asst. U. S. Atty.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The time for the completion of the contract, which was originally 16 months from the date of the contract, was, without the consent of the sureties, extended for a further period of 1 year. We may premise the discussion of the question whether the sureties were thereby released from their obligation by adverting to some of the well-settled principles applicable to the obligation of a surety for the performance of his principal's contract: (1) The contract of a surety is to be construed as any other contract—that is to say, according to the intent of the parties—and the rules for its construction are not to be confused with the rule that sureties are favorites of the law and have the right to stand upon the strict terms of their obligation. Brandt on Suretyship and Guaranty (2d Ed.) §§ 92 and 94; Lee v. Dick, 10 Pet. 480, 493, 9 L. Ed. 503. (2) It being determined what is the meaning of the contract, the sureties are entitled to stand upon the very terms of their undertaking. Said Justice Story:

"Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent and in the manner and under the circumstances pointed out in his obligation, he is bound, and no further. It is not sufficient that he may sustain no injury by change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract, and if he does not assent to any variation of it, and variation is made, it is fatal."

Miller v. Stewart, 9 Wheat. 680, 701, 6 L. Ed. 189. Of similar import are Smith et al. v. United States, 2 Wall. 219, 17 L. Ed. 788; Reese v. United States, 9 Wall. 13, 19 L. Ed. 541; United States v. Freel, 186 U. S. 309, 22 Sup. Ct. 875, 46 L. Ed. 1177; and Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242. (3) If, in a contract for the performance of work or the construction of a building or other improvement, it is provided that in the course of the work one of the parties shall have the right to make certain specified changes therein, the sureties for the contractor are deemed to assent in advance to the making of such alterations; and if they are made, although they may materially vary the contract, the sureties are not released thereby. Wehr et al. v. Germ. Evan. St. Matthew's Con., Balto., 47 Md. 177; Hayden v. Cook, 34 Neb. 670, 52 N. W. 165; Village of Chester v. Leonard et al., 68 Conn. 495, 37 Atl. 397; People's Lumber Co. v. Gillard, 136 Cal. 55, 68 Pac. 576; United States v. Freel (C. C.) 92 Fed. 299; De Mattos v. Jordan, 15 Wash. 378, 46 Pac. 402; Northern Light Lodge v. Kennedy, 7 N. D. 146, 73 N. W. 524; American Surety Co. v. San Antonio Loan & Trust Co. (Tex. Civ. App.) 98 S. W. 387, 403.

It is not disputed that the extension of time given the contractor in the present case was a variation of the contract sufficient in itself to discharge sureties; but the defendant in error contends that the contract provides for extensions of time, and that therefore the sureties must be deemed to have assented thereto, and that the case comes within the doctrine of the decisions last above cited. It is true that the contract refers in terms to the subject of extension of time. It provides, first, that, in case of unavoidable accident or storm which is likely to delay the progress of the work, the contractor shall forthwith notify in writing the officer in charge, stating in what way and to what extent the fulfillment of the contract may be delayed, so that timely investigation may be made, and that, unless that be done, no subsequent application for extension of time on account of such occurrence will be recommended. It provides, further, that, if the progress of the work should be delayed by anything but unforeseen and unavoidable accidents or storms, or by the action of the government, no application by the contractor for an extension of time will be recommended for favorable consideration, except on condition that the contractor make good any deterioration caused by such delay, etc., and that no extension of time for the completion of the work can be made except upon the authority of the Secretary of the Navy. In none of these provisions is there a promise on the part of the United States that there shall be an extension of time. In none of them, under any exigency that may arise, is the contractor given any right to extension of time. The whole purport of these provisions is to let the contractor know what, if any, excuses for delay will be considered by the officers of the government in case of an application for extension of time, and to specify the officer of the government in whom alone is vested the power to grant it. Such a contract does not provide for an extension of time. It gives no right of any kind to either of the contracting parties. To say that the

contractor may apply for an extension of time is to confer no right. That right, it is needless to say, always exists in the absence of such a provision. The mere suggestion in the contract that one of the parties thereto may, if it sees fit, ask for an extension of time, and that the other party may, if it sees fit, grant it, interjects nothing of a contractual nature. By virtue thereof, the sureties who undertake to become responsible for the performance of the contract cannot be said to assent to extension of time. Sureties to all contracts must be presumed to know that the contracting parties have, as between themselves, the power to make such alterations therein as they may subsequently agree upon. Unless the right to alter the same is expressly reserved in the contract itself, the obligation of the sureties is to answer for the default of their principal upon the precise contract made, and not upon one which may thereafter be made without their assent. Even an express provision in such a contract that, in the event of the occurrence of certain causes of delay, "additional time may in writing be allowed" the contractor, does not mean that it shall be allowed. United States v. Gleason, 175 U. S. 588, 20 Sup. Ct. 228, 44 L. Ed. 284.

The decisions cited and relied upon by the defendant in error are all cases in which the power to make the alterations was expressly reserved, and in which it was stipulated that the contract should not thereby be invalidated. Thus in Wehr et al. v. Germ. Evan. St. Matthews Con., Balto., the court said:

"But if, by the terms of the original contract, additions to or alterations in the work are provided for, or left to the judgment and discretion of the other contracting party, either without limit or within certain limits, then the variation, if within the limits prescribed, is allowed by the contract itself, and the surety cannot complain of the variation which he has agreed to by the original contract."

In Hayden v. Cook, in a building contract, it was provided that the owner at any time during the progress of the work should have the right to make any alterations, changes, or additions to the building, and that the same should not invalidate the contract. It was held that the changes and additions disclosed by the evidence were provided for in the contract, and that the making of the same did not discharge or release the surety. In Village of Chester v. Leonard et al. the original contract provided that the engineer of the village could make such changes in the forms, dimensions, and alignment of the work as might, in his opinion, and that of the board of water commissioners, be necessary for its proper fulfillment. The court said:

"Sureties for the performance of a contract so framed must be presumed to contemplate the making of such changes, and, as the defendants did not stipulate for any right to participate in determining whether they should be made, there was no occasion to notify any one but the principal contractor of the fact that they had been ordered."

In People's Lumber Company v. Gillard, it was held that, where the contract to which the bond was appended provided for certain changes by the board of trustees, the sureties on the bond must be presumed to have known of such provision, and to have agreed that

they would be bound in case changes were made in the contract. The other cases cited are of like effect.

The judgment is reversed, and the cause is remanded to the Circuit Court, with instructions to enter judgment for the defendants in the action upon the pleadings and the agreed statement of facts.