EDWIN M. TOMLINSON *vs.* THOMAS SIMPSON and another.

June 9, 1885.

33 443,
68 425,
33 443
82 189

**Guardian's Sale—Sale-Bond—Action by Ward.**—T., a minor, owned 80 acres of land in section 11, and 80 in section 14. S., his guardian, obtained license to sell two eighties in section 11,—one owned by T. and the other not. S., as principal, and W., as surety, executed a sale-bond, conditioned that S. would sell the two eighties in section 11, and dispose of the proceeds according to law. S. then proceeded, and, as guardian, sold the two eighties in fact owned by T., as an entirety, for a gross sum, and commingled the money with his own funds. Subsequently, S. paid out and expended various sums for the use of his ward. T. having attained his majority, and S. having failed to account for or pay over the balance due his ex-ward, T. sued on the sale-bond to recover the proceeds of the 160 acres sold, less the amounts paid out by S. for his use. No fraud or mistake in the terms of the bond is alleged. *Held*, that T. could elect to allow the void sale of the 80 in section 14 to stand, and claim the

purchase-money in the hands of S. Also, that W., the surety, is not liable for the proceeds of the 80 in section 14, but is for the proceeds of the 80 in section 11. Also, that, in order to ascertain the amount for which W. is liable, the amount due T. must be apportioned between the two tracts sold, in proportion to their respective values at the time of sale. Also, that, as to S., the whole being one debt, and his disbursements having been made generally with reference to it as an entirety, the credits must be applied in reduction of the entire claim, and the balance apportioned between the two eighties; that W. has no right to have the credits exclusively applied to extinguish the part for which he was liable, nor has T. any equity entitling him to have them first applied to extinguish the part for which W. was not liable.

Separate appeals by the defendants from orders by *Start*, J., refusing a new trial, after a trial by the court, a jury having been waived.

*William Gale*, for appellant, Willson.

*Vance & Tawney*, for respondent.

MITCHELL, J. Plaintiff, a minor, owned S. $\frac{1}{2}$ of S. E. $\frac{1}{4}$ of section 11, and N. $\frac{1}{2}$ of N. E. $\frac{1}{4}$ section 14, town 102 N., of range 13. Defendant Simpson, his guardian, petitioned the probate court for license to sell the S. $\frac{1}{2}$ of S. E. $\frac{1}{4}$ and N. $\frac{1}{2}$ of N. E. $\frac{1}{4}$ of section 11, town 102, range 13. The court granted him license to sell the S. $\frac{1}{2}$ of S. E. $\frac{1}{4}$ and N. $\frac{1}{2}$ of N. E. $\frac{1}{4}$ of section 11. Thereupon Simpson, as principal, and defendant Willson, as surety, executed to the judge of probate a bond, the condition of which was "that whereas, the above bounden Thomas Simpson, in his capacity of guardian of Edwin M. Tomlinson, has been licensed by an order of the said probate court * * * to sell the real estate of said minor, to wit, the S. $\frac{1}{2}$ of S. E. $\frac{1}{4}$ and the N. $\frac{1}{2}$ of N. E. $\frac{1}{4}$ of section 11, township 102 N., of range 13 W.: Now, therefore, if the said Thomas Simpson do and shall justly and faithfully sell the *said* real estate in the manner prescribed by law, and shall justly and truly account for and dispose of all the proceeds of *said* real estate, in the manner provided by law, and according to law, and shall perform all orders and decrees of said court by him to be performed in the premises, then this obligation shall be void, otherwise it shall be and remain in full force and virtue."

It will be observed that the land described in the petition, license, and bond consists of one 80 owned by the ward and another which

he did not own. Subsequently Simpson proceeded and sold the two eighties in fact owned by his ward, viz., one in section 11 and another in section 14. He sold both as an entirety for the gross sum of $2,400. This money he mingled with his own and never invested it for his ward. This sale was confirmed by the court and a deed made to the purchaser. Between the date of the sale and the time when the plaintiff attained his majority, Simpson paid out and expended for his use, from time to time, divers sums, amounting in the aggregate to about $1,460, and rendered services as guardian of the value of $300. Simpson having failed to render an account as was required by the court, and having failed to settle with or pay over to the ward on his becoming of age, plaintiff, on leave of the court, sues on the bond to recover the entire sum of $2,400, less the amounts disbursed for his benefit. In the complaint he alleges a sale by Simpson, as his guardian, under license from the probate court, of his whole 160 acres for the sum of $2,400. There is no allegation or proof of any fraud or of mistake in the terms of the bond. Simpson does not dispute his liability to account for the whole of the $2,400.

The court, upon an accounting, charged Simpson with the full sum of $2,400, and credited him with the amount disbursed for his ward, and with his services as guardian, and found the balance due plaintiff, including interest, to be $1,390.66, with interest from April 22, 1883, less $10 subsequently paid. The court also found (upon evidence we think sufficient) that the 80 acres in section 11 was worth $300 more than the 80 in section 14. The court, while intimating an opinion that Willson was liable on his bond for the entire $2,400, assumed, for the purposes of his decision, that he would be only liable for the proceeds of the 80 acres described in the license and bond, and that the $2,400 should be apportioned between the two eighties. But, while assuming this, yet the court held that, as between Willson and plaintiff, the latter had the superior equity, and was entitled to have the amount of Simpson's disbursements and services first applied to the payment or extinguishment of that part of the $2,400 arising from the sale of the 80 acres not described in the license and bond. This was held, as we understand it, upon the principle that,

no application having been made by the parties, the law would make the application most beneficial to the creditor; that is, to that part of the claim for which he had no security. Upon this view of the law the court ordered judgment against both defendants for the full amount due plaintiff.

As Simpson does not here urge his appeal, the order appealed from must, as to him, be affirmed. The main questions arise on the appeal of Willson, the surety. These questions are three : (1) Was the surety liable for the entire $2,400 received by Simpson on the sale of both eighties? (2) If not, could the amount be apportioned between the two eighties in proportion to their values at the time, and Willson held liable for the proceeds of the 80 described in the license and bond? (3) And if so, how should Simpson's credits be appropriated?

It seems to us that the first of these questions must be answered in the negative. It is a settled rule of law that a surety is not to be held beyond the terms of his contract. The claim against him is *strictissimi juris.* Nothing can be clearer, both upon principle and authority, than that the liability of a surety is not to be extended by implication beyond the precise terms of his bond. To the extent and in the manner pointed out in his obligation he is bound, and no further. He has a right to stand on the very terms of his contract. In this case the conditions of the bond were that Simpson would sell according to law and account for the proceeds of land in section 11, specifically described in both the license and bond. Having contracted merely to be responsible for his principal's acts in selling one tract of land which the latter had been licensed to sell, we are unable to see on what principle he can be held responsible for the proceeds of an entirely different tract. It is no answer to say that it was not necessary that either the license or the bond should specifically describe the land to be sold. They do describe it, and the land thus described is the only land which Simpson was authorized to sell, and the only land for the sale of which Willson, by the terms of his bond, contracted to become liable. Neither will it do to say that it was the 80 in section 14 that was intended, instead of the second 80 in section 11. We may very naturally surmise that Simpson made a mis-

take of description in his petition, and that this description was afterwards followed in the license and bond. But there is neither allegation nor proof of this. No mistake in the bond is either alleged or proved, nor is any reformation of it asked for. Indeed, on the probable facts, it is difficult to see how any case for this could be made out. But, however that may be, plaintiff sues upon the bond as it stands, and its terms as it reads must determine Willson's liability.

2. But, while we are satisfied that Willson cannot be held for the proceeds of the 80 in section 14, yet we see no reason why he is not liable for those of the 80 in section 11. The sale of the latter was authorized by the license, and Simpson has sold it, and received the proceeds. These are the very things in reference to which Willson obligated himself by his bond. There can be no doubt but that the sale of this 80 was valid, and there certainly is no equitable reason, at least, why Willson should not be liable, if Simpson has not accounted for the proceeds. The only difficulty is to ascertain the amount of the proceeds, in view of the fact that it was sold together with another tract as an entirety for a gross sum. But to our minds this presents no serious trouble. The gross sum of $2,400 must be apportioned between the two eighties, in proportion to their respective values at the time of sale, and the result taken as the amount realized from each tract. The facts of the case admit of no other or more definite mode of ascertaining the fact. The law frequently resorts to this or analogous methods of ascertaining one party's liability, or the measure of the other's damages. For example, where there is a breach of a covenant of title by a failure of title of part of a tract sold as an entirety, the purchaser recovers *pro tanto*. In such a case he may produce evidence to show the relative value which the part bears to the whole, and this, as has been said, operates with equal justice to both parties.

3. We are, however, of opinion that the court erred in the manner of applying Simpson's credits. The principle which he assumed to apply was that, where the parties have made no application, the law will apply payments in the way most beneficial to the creditor, and therefore, where there are two debts, to the one least secured. We may here say that while the parties who control the money—that is,

the debtor who pays it or the creditor who receives it—may usually apply it as they see fit, yet we have found no well-considered case where the law has applied this rule to the prejudice of a surety. See *Pierce* v. *Sweet*, 33 Pa. St. 151. We think, however, that the rule is inapplicable to the facts of this case. It can only apply where there are two separate and independent debts. See *Hersey* v. *Bennett*, 28 Minn. 86. Now, in this case, while, in order to ascertain the amount of Willson's liability, we apportion the amount received at the sale between the two tracts, yet, as between Simpson, the principal debtor, and who made the payments, and plaintiff, the creditor, there is but one debt. Simpson received the whole $2,400 at one time as an entirety. The disbursements which he made for the use of his ward, were made with reference to the whole amount in his hands as one fund. The intention of the parties, express, implied, or presumed, is after all an important if not controlling consideration in the eye of the law in the application of payments. On the facts of this case there can certainly be no presumption that Simpson made these disbursements with reference to one part of the fund in his hands more than another. The fund in Simpson's hands, or the debt which he owed, (whichever you please to call it,) being one, the amounts which he disbursed must be applied to the reduction of that debt or fund as an entirety. The plaintiff has no superior equity.

The sale of the land in section 14 was void. The plaintiff was under neither obligation nor necessity of recognizing the unauthorized acts of his guardian. He might have brought ejectment, and recovered the land from the purchaser. Willson urges this as a reason why he has a superior equity, entitling him to have the credits first applied to the extinguishment of the amount for which he is responsible. But the same reason which precludes the plaintiff from having these credits first applied to the other part of the fund, is equally applicable against this contention of Willson. · Simpson having assumed, as guardian, to sell and convey his ward's property, and having received the purchase-money, and neither the ward nor the purchaser having attacked the validity of the sale, he is estopped from asserting the invalidity of his own acts, and from denying that the whole amount received by him belongs to the plaintiff. He does not

attempt to do so. Plaintiff, having attained his majority, could, if he saw fit, elect to allow the sale to stand and follow the proceeds, and by so doing he affirms the sale in the sense and to the extent of working an estoppel against his afterwards asserting its invalidity. See Freeman, Void Judicial Sales, § 48; *Jennings* v. *Kee*, 5 Ind. 257; *Lee* v. *Gardiner*, 26 Miss. 521; *Pursley* v. *Hays*, 17 Iowa, 310; *Deford* v. *Mercer*, 24 Iowa, 118; *Handy* v. *Noonan*, 51 Miss. 166; *Stroble* v. *Smith*, 8 Watts, 280; *Smith* v. *Warden*, 19 Pa. St. 424; *Taylor* v. *Taylor*, 6 B. Mon. 559.

The case, therefore, stands thus: Simpson has in his hands the proceeds of 160 acres, the money of the plaintiff. It is all one fund or debt, although by the terms of his bond Willson is only liable for a certain proportion of it. Simpson has made certain disbursements with reference to the whole fund or debt as an entirety. These must be first applied to the reduction of the claim against him as a whole, and then an apportionment of the deficiency made between the two eighties in proportion to their respective values, in order to ascertain the amount of Willson's liability. Simpson having in his hands the proceeds of the 160 acres as one entire fund, and having made disbursements generally with reference to that, we fail to see that Willson has any more right to have them all applied upon one part of the fund than plaintiff has to have them exclusively applied upon another.

The order appealed from is, as to Simpson, in all things affirmed, and the case is remanded, with instructions to the court below to modify its order for judgment against Willson in accordance with this opinion. No new trial is necessary.