[Civil No. 992.   Filed March 25, 1907.]

[90 Pac. 328.]

## PRESCOTT NATIONAL BANK, Defendant and Appellant, v. A. J. HEAD, Plaintiff and Appellee.

1. APPEAL AND ERROR—TRANSCRIPT—FILING—TIME—REV. STATS. ARIZ. 1901, PARS. 1486 AND 1496, SUPREME COURT RULE, No. 2, CONSTRUED.—Paragraph 1486, *supra*, permits the oral testimony given in a case to be made a part of the record by filing a transcript of the court reporter's notes, but does not expressly prescribe the time within which such transcript should be filed.  By rule of the court, *supra*, it is provided that the transcript, in order to become a part of the record, must be filed during the term in which the judgment is rendered, or within such reasonable time thereafter as shall be allowed by the court or judge thereof.  Paragraph 1496, *supra*, provides that an appeal may be taken "during the term of court at which final trial judgment or order is rendered" by giving notice of appeal in open court.  *Held,* that the term at which judgment is rendered is the term at which it becomes final by the overruling of the motion for a new trial, and a transcript filed at that term is filed at the proper time.

2. PRINCIPAL AND SURETY—BOND—CONSTRUED—LIABILITY—EXTENT.—A building contractor's bond required him to complete the work according to a contract referred to and incorporated in such bond, and provided that "the condition of the above obligation is such that" he "shall finish the above work on or before the first day of July, 1901, as per contract."  The contract required that the contractor should provide the material and perform all work mentioned in the specifications, and if at any time there should be evidence of any lien or lienable claim, the owner should have the right to retain out of any claim then due  sufficient to indemnify himself against such lien or claims, and should there be any claims after the payments are made, the contractor should refund to the owner moneys that the latter may be compelled to pay in discharging them.  *Held,* that the said bond may fairly be interpreted to require the obligors to indemnify the obligee for liens arising by reason of the contractor failing to pay for materials.

3. MECHANIC'S LIEN — SURETY — NOT ESTOPPED TO CLAIM LIEN.—A surety on a building contractor's bond which requires the contractor to pay all material liens is not, by reason of his being surety, estopped to assert a material lien held by himself.

4. SAME—SETOFF BY OWNER—REV. STATS. ARIZ. 1901, PAR. 3558, CONSTRUED.—Paragraph 3558, *supra,* provides, among other things and with certain exceptions, that no surety shall be sued unless his principal is joined.  *Held,* where the surety on a building contractor's

bond which requires the contractor to pay all material liens claimed
sues the obligee, the owner of the building, to foreclose a lien held
by him, paragraph 3558, *supra,* does not preclude said owner from
setting up the surety's liability under the bond as a setoff or coun-
terclaim.

5. PRINCIPAL AND SURETY—DISCHARGE OF SURETY—REV. STATS. ARIZ.
1901, PARS. 3551 AND 3552, CONSTRUED.—A notice following the lan-
guage of paragraph 3551, *supra,* which provides that a surety, when
a right of action has accrued under the bond, may require the obligee
to forthwith sue thereon, is sufficient, it not being necessary that
the notice should recite that right of action has accrued, and that if
the obligee fails to comply with the notice, the surety intends to
avail himself of the discharge provided for by paragraph 3552,
*supra.*

6. SAME—SAME—PREMATURE—REV. STATS. ARIZ. 1901, PARS. 3551, 3552
—CONSTRUED.—Under paragraphs 3551 and 3552, *supra,* which re-
quires that a surety may require the obligee, when right of action
has accrued, to sue forthwith, and for the surety's discharge if the
obligee fails so to do, such notice to the obligee in a building con-
tractor's bond, which required contractor to discharge all material
lien claims, was prematurely given, where plaintiff, a lien claimant,
who was also a surety under the bond, served such notice subse-
quent to the time of filing his suit to foreclose his lien, and prior
to the expiration of the time when the defendant, the obligee under
bond, was entitled to file a counterclaim upon the bond for the
amount of his lien.

7. SAME—BOND—CONTRACT—CHANGE IN OBLIGATION.—Where certain
changes in a contract were made without the knowledge of the surety
on a building contractor's bond, where the changes were made wholly
at the obligee's expense, and did not add to the surety's liability,
such changes did not operate to discharge the surety on the bond.

APPEAL from a judgment of the District Court of the
Fourth Judicial District, in and for the County of Yavapai.
Richard E. Sloan, Judge.

The facts are stated in the opinion.

Norris & Ross, for Appellant.

The plaintiff, by reason of his being a surety on the bond
of the contractor for the faithful performance of the con-
tract, is estopped from enforcing his liens. The surety
guarantees the faithful performance of the contract and is
precluded from enforcing his lien. *McHenry* v. *Knicker-
backer et al.,* 128 Ind. 77, 27 N. E. 430; *Scheid* v. *Rapp,* 121
Pa. 593, 15 Atl. 652; *Spears* v. *Lawrence,* 10 Wash. 368, 45

Am. St. Rep. 789, 38 Pac. 1049; *Aikens* v. *Frank,* 21 Mont. 192, 53 Pac. 538; *Rynd* v. *Pittsburg Natatorium et al.,* 173 Pa. 237, 33 Atl. 1041; *Gannon* v. *Central Presbyterian Church,* 173 Pa. 242, 33 Atl. 1043. A contract of indemnity is for the purpose of protecting the obligee against liability arising from the failure of the contractor to perform his contract according to his agreement. 20 Am. & Eng. Ency. of Law, 2d ed., 490, 491, and cases; *Hartman* v. *Berry,* 56 Mo. 487; *Zarrs* v. *Keck,* 40 Neb. 456, 58 N. W. 934; *Ganahl* v. *Weir,* 130 Cal. 237, 62 Pac. 512; *Blyth* v. *Robinson,* 104 Cal. 239, 37 Pac. 904; *McRae* v. *University of the South* (Tenn. Ch.), 52 S. W. 463; *Gamble* v. *Cuneo,* 162 N. Y. 634, 57 N. E. 1110; *Smith* v. *Molleson,* 148 N. Y. 241, 42 N. E. 670; *Mayes* v. *Lane,* 116 Ky. 566, 76 S. W. 399. The contract of suretyship and the principal contract will be reasonably construed, and the surety will not ordinarily be released from liability, except by reason of some fact which would directly affect or change his status, either with reference to his principal or with reference to his liability. Substantial compliance with the principal will be sufficient. *Benjamin* v. *Hillard,* 23 How. (U. S.) 149, 16 L. Ed. 518; *Roach* v. *Summers,* 20 Wall. (87 U. S.) 165, 22 L. Ed. 252; *United States* v. *Freel,* 92 Fed. 299, 186 U. S. 317, 22 Sup. Ct. 875, 46 L. Ed. 1177; *Ryan* v. *Morton,* 65 Tex. 258; *Barclay* v. *Deckerhoof,* 151 Pa. 374, 24 Atl. 1067; *Snoqualmi Realty Co.* v. *Moyniham,* 179 Mo. 629, 78 S. W. 1014; *Chaffee* v. *United States Fidelity & Guaranty Co.,* 128 Fed. 918, 63 C. C. A. 644; *Schreiber* v. *Worm,* 164 Ind. 7, 72 N. E. 852; *Hohn* v. *Shideler,* 164 Ind. 242, 72 N. E. 575; *Cowles* v. *United States Fidelity & Guaranty Co.,* 32 Wash. 120, 98 Am. St. Rep. 838, 72 Pac. 1032; *Grafton* v. *Hinkley,* 111 Wis. 46, 86 N. W. 859; *Guaranty Co.* v. *Pressed Brick Co.,* 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242; *Risse* v. *Hopkins Planing-mill Co.,* 55 Kan. 518, 40 Pac. 904; *McLennan* v. *Wellington,* 48 Kan. 756, 30 Pac. 183. Mere immaterial alterations or departures from original contract, which do not change the legal effect, do not operate to discharge the sureties. *Starr* v. *Blatner,* 76 Iowa, 356, 41 N. W. 41; *McConnell* v. *Poor,* 113 Iowa, 133, 84 N. W. 968, 52 L. R. A. 312; *Robinson* v. *Hagenkamp,* 52 Minn. 101, 53 N. W. 813; *Moore* v. *The School Commissioners* (Miss.), 8 South. 509; *Kretschmar* v. *Bruss,* 108 Wis. 396, 84 N. W. 429. Surety was not discharged by reason of giving notice to sue on bond under sections 3551

and 3552, Revised Statutes of Arizona of 1901. Notice so given was defective and insufficient in form. 27 Am. & Eng. Ency. of Law, 2d ed., 513, and cases cited; *Cope* v. *Smith*, 8 Serg. & R. 110, 11 Am. Dec. 582; *Greenawalt* v. *Kreider*, 3 Pa. 264, 45 Am. Dec. 639; *Scales* v. *Cox*, 106 Ind. 261, 6 N. E. 622; *Kauffman* v. *Commonwealth*, 8 Atl. 600.

Where the lien is claimed for a sum in excess of the contract price, and the full contract price has been paid in good faith, the lien cannot be enforced against the property of the owner. *Renton* v. *Conley*, 49 Cal. 185; *McAlpin* v. *Duncan*, 16 Cal. 127; *Bowen* v. *Aubrey*, 22 Cal. 571; *Wells* v. *Cahn*, 51 Cal. 423; *Shields* v. *Morrow*, 51 Tex. 399.

Andrews & Pattee, and Robt. E. Morrison, for Appellee.

Head was not estopped from enforcing his lien by reason of being a surety upon the bond. Any change in the contract made without the consent of the surety releases him from liability, and this regardless of whether he is prejudiced by the alteration. *Miller* v. *Stewart*, 9 Wheat. 680, 6 L. Ed. 189; *Simonson* v. *Grant*, 36 Minn. 439, 31 N. W. 861; *Gato* v. *Warrington*, 37 Fla. 542, 19 South. 883; *Northern Light Lodge* v. *Kennedy*, 7 N. D. 146, 73 N. W. 524; *Burns' Estate* v. *Fidelity & Deposit Co.*, 96 Mo. App. 467, 70 S. W. 518; *Chapman* v. *Enenberg*, 95 Mo. App. 127, 68 S. W. 974; *Evans* v. *Graden*, 125 Mo. 72, 28 S. W. 439; *Erickson* v. *Brandt*, 53 Minn. 10, 55 N. W. 62. Subsequent approval of the bills did not estop appellee from taking advantage of his release from liability. *Erfurth* v. *Stevenson*, 71 Ark. 199, 72 S. W. 49. Appellee was released from liability by giving notice to bring suit and the failure of the appellant to do so. Technical accuracy is not necessary in a notice of this kind. 2 Brandt on Suretyship and Guaranty, 2d ed., p. 867, sec. 605; *Meriden Silver Plate Co.* v. *Flory*, 44 Ohio St. 430, 7 N. E. 753.

NAVE, J.—Prior to the hearing of this case upon its merits, a motion filed by appellee to strike from the record the transcript of the reporter's notes was denied; as was also a motion by appellee to dismiss the appeal. These motions raised a question of practice which has not heretofore been the subject of a formal expression of our opinion. The judgment of the district court in this cause was rendered during the May term of the year 1905. Within that

term a motion for a new trial was filed by appellant. By formal order, action upon this motion was continued for the term. Again at the November term there was a formal continuance of the motion. It was denied at the May term, 1906; whereupon appellant gave notice of appeal, and during that term caused to be made and filed a transcript of the reporter's notes of the oral testimony.

Paragraph 1486 of the Civil Code permits the oral testimony given in a case to be made a part of the record by filing a transcript of the court reporter's notes. The statute does not expressly prescribe the time within which such transcript shall be filed. By the rules of this court, it is provided that the transcript, in order to become a part of the record, must be filed during the term in which the judgment was rendered, or within such reasonable time thereafter as shall be allowed by the court or the judge thereof. No extension of time was allowed. It was contended by the appellee that the reporter's transcript should be stricken from the record by reason of the fact that it was not filed within the term at which judgment in the cause was rendered. By paragraph 1496 of the Civil Code it is provided that an appeal may be taken "during the term of the court at which final judgment or order is rendered" by the giving of notice of appeal in open court. The notice of appeal, as above stated, was given after the overruling of the motion for new trial at a term subsequent to that at which judgment was rendered. Upon this the appellee based his motion to dismiss the appeal. Our construction of our rule in regard to filing the reporter's transcript and of paragraph 1496 is that for these purposes the term at which the judgment is rendered is the term at which the judgment becomes final by the overruling of a motion for a new trial. A different construction would lead to a palpable absurdity.

Appellant has made thirty-five assignments of error. Of these assignments the second to sixth, inclusive, the twelfth, and the twenty-first to thirty-fifth, inclusive, are too general for consideration. They are of the same character as those which were refused consideration in *Ward* v. *Sherman*, 7 Ariz. 277, 64 Pac. 434; *Charouleau* v. *Shields*, 9 Ariz. 73, 76 Pac. 821, and *Daniel* v. *Gallagher*, *ante*, p. 151, 89 Pac. 412. By the remaining assignments of error several matters are raised which we may properly consider.

The facts in the case are as follows: One Grant contracted to construct a building for the Prescott National Bank, the appellant in this case. A. J. Head, the appellee, was one of two sureties upon a joint and several indemnity bond given by the contractor to the bank. Head sold material to the contractor for the construction of the building. The material not having been paid for in full, Head perfected a lien upon the property for the unpaid balance. This is a suit by Head against the bank to foreclose this lien, and also the lien of another materialman which had been assigned to him. The bank answered setting forth the indemnity bond given to it by the contractor, and pleaded that Head, by reason of his obligation as surety thereon, is estopped from maintaining the action to foreclose these liens. Furthermore, the bank filed a counterclaim, setting up the indemnity bond, and demanding from Head the payment of the amounts of liens paid by the bank to other persons, and of an amount expended by the bank to complete the building after abandonment of the work by the contractor. The trial court made findings of fact, which need not here be set forth, except to note a finding that certain alterations had been made in the work shown by the specifications without written orders of the supervising architect; the contract providing that no alteration shall be made except upon the written "order of the architect." Upon these findings the trial court predicated, among others, the following conclusions of law: "(1) That the written contract made between said Grant and the Prescott National Bank is sufficiently referred to in said bond, and that a breach of said contract by failure to pay lien claims is a breach of said bond, and is covered by the conditions of said bond. (2) That primarily the plaintiff, being a surety on said bond, was estopped from enforcing a lien on said property, and that by said written notice to bring suit and failure to do so, plaintiff was released from liability upon said bond for lien claims filed by third parties and for the cost of completing said building, but was not, for that reason, relieved from the effect of the estoppel against enforcing his liens. (3) That by the making of such changes and alterations, without the written order of the architect, and without the knowledge of the plaintiff that they had been so made, plaintiff was released from all liability on said bond, or upon the counterclaim filed herein, and is not estopped from maintaining and enforcing his said liens upon said prop-

erty." The proper determination of this appeal is to be reached by a consideration of the soundness of these conclusions.

1. The condition of the indemnity bond is as follows: "The condition of the above obligation is such that, whereas, the above A. Grant has this day contracted and agreed with the said Prescott National Bank to furnish all the labor and material necessary to construct in good, substantial and workmanlike manner a two-story brick and stone building on the west half of lot 24, in block 9, in the city of Prescott, Arizona. Work to be done in strict accordance with the plans, specifications and a contract, executed between the above parties, bearing even date with this. Said contract is made a part of this bond, and to which reference is made for a more complete description of the terms and conditions of the same. The express condition of the above obligation is that said A. Grant shall finish the above work on or before the first day of July, 1901, as per contract. Then this obligation to be void and of no effect; otherwise to remain in full force and virtue." The contract requires that the contractor shall provide the material and perform all work mentioned in the specifications and as shown in the architect's drawings for the proper erection and construction of the building. It provides, further, that, if at any time there should be evidence of any lien or lienable claims, the owner should have the right to retain out of any payments then due an amount sufficient to indemnify him against such lien or claims; and, should there be any such claim after the payments are made, the contractor should refund to the owner moneys that the latter may be compelled to pay in discharging them. The "express condition" of the bond is brief indeed—that the contractor shall finish his work by a certain date "as per contract." To finish the work "as per contract," the contractor must furnish the materials. If he has placed the materials in the building without paying for them, and thereby has brought about the charging of the materials upon the owner by means of the materialman's lien, he has not furnished the material within the meaning of his contract. This bond must be interpreted in accordance with the intention of the parties in so far as their intention may be deduced from the instrument. While it is easy to suggest apt expressions by which the condition of the bond could have been framed to avoid the raising of the question of

interpretation, we believe it may fairly be interpreted to require the obligors to indemnify the obligee for liens arising by reason of the failure of the contractor to pay for material. Therefore we approve of the first conclusion of law above quoted, and overrule appellee's contention that appellant has no standing under the condition of the bond to enforce an indemnity for liens.

2. The trial court proceeded to find "that primarily the plaintiff, being a surety on said bond, was estopped from enforcing a lien on said property." With this conclusion appellant earnestly concurs, and contends that the court erred in his subsequent predication of relief from this estoppel. In support of this theory of estoppel appellant cites *McHenry* v. *Knickerbacker*, 128 Ind. 77, 27 N. E. 430; *Schield* v. *Rapp*, 121 Pa. 593, 15 Atl. 652; *Spears* v. *Lawrence*, 10 Wash. 368, 45 Am. St. Rep. 789, 38 Pac. 1049; *Aikens* v. *Frank*, 21 Mont. 192, 53 Pac. 538; *Rynd* v. *Pittsburg Natatorium*, 173 Pa. 237, 33 Atl. 1041; *Gannon* v. *Central Presbyterian Church*, 173 Pa. 242, 33 Atl. 1043. But an inquiry into the correctness of this conclusion is essential to our determination of this case. We are unable to perceive in the relation existing between a surety on such a bond and the obligee any element of estoppel to prevent him from securing and asserting a lien upon the property. In the decisions erecting such estoppel, it is asserted that it would be inequitable for one who is obligated to protect the grantor from a lien to assert such a lien; and therefore the surety must be held to be estopped from asserting such a lien. It is pointed out, also, that by raising and enforcing such an estoppel circuity of action is obviated. The situation is not resolved by appealing to equitable principles. The surety has not made a representation of fact which is inconsistent with the assertion by him of a lien. To permit him to assert a lien does not result in misleading the obligee in the bond, or in injuring him. The obligee's rights are undisturbed. The relation between the surety and the obligee is purely one of contract; the right of a materialman to secure and enforce a lien upon real estate for a structure upon which he has furnished material is created by statute. If the lienholder and the surety happen to be the same person, a situation arises wherein there should be a mutual offsetting of obligations; but it is difficult for us to perceive by what line of reasoning it may be said to be inequitable or unconscionable for a surety to maintain

such a lien. The lien may perchance be far in excess of the penalty of the bond. Must he then lose the entire amount when he contracted to indemnify the owner of the premises to the extent of a smaller amount only? Or if, as in this instance, he is but one of two sureties, must he lose the important right of contribution from the other surety by an asserted "estoppel" to maintain and enforce his lien? Circuity of action is as effectually avoided by means of a setoff or counterclaim as it is by means of the construction of an estoppel. By it all just rights of the parties, one as against the other, are effectually preserved, and are enforceable precisely in accordance with the obligation raised by the bond on the one hand, and by the operation of the lien statute on the other. See 20 Am. & Eng. Ency. of Law, 2d ed., 490, and cases cited. The maintenance of such setoff or counterclaim is not in violation of the provisions of paragraph 3558, Revised Statutes of 1901, that "no surety [except in certain instances not here pertinent] shall be sued unless his principal is joined with him." The surety, having sued to foreclose a lien, is obliged by equitable principles to submit to an examination into his own liability to pay the amount of such lien. Paragraph 3558 touches but the remedy. Its provisions may be waived by the surety, and in such an instance must be deemed waived, if, indeed, by reason of the fact the action is of the surety's own choosing, they are applicable at all. The rulings upon the counterclaim filed in this action disclose that the trial court correctly so held. Therefore, in holding that the surety, primarily, was estopped to enforce his lien, the trial court was in error.

3. On December 26, 1902, after this action had been pending for several months, Head served a notice upon the bank, wherein was set forth in full the bond upon which he was surety, and which concluded: "Now, therefore, the said Prescott National Bank is hereby notified to forthwith institute suit upon such contract." No suit was brought by the bank upon the bond except in its counterclaim in this action. This counterclaim was filed on September 9, 1903, more than eight months after the service of the notice. The trial court found, as quoted above, "that by said written notice to bring suit and failure to do so plaintiff was released upon liability upon said bond for lien claims filed by third parties and for the cost of completing said building, but was not, for that reason, relieved from the effect of the estoppel against enforcing his

liens.'' Appellant maintains that this finding is erroneous, for three reasons: '' (a) That the statute providing for the giving of notice does not contemplate a case such as the one at bar; (b) that, even if contemplated, that notice was defective in form, and is not such a notice as the statute requires; (c) that the notice was prematurely given even if within the statute and sufficient in form.''

The statutes involved are the following:

''Par. 3551. Any person bound as a surety upon any contract for the payment of money or the performance of any act, when the right of action has accrued, may require, by notice, in writing, the creditor or obligee forthwith to institute suit upon such contract.

''Par. 3552. If the creditor or obligee, not being under legal disability, shall fail to bring his suit within sixty days after receiving said notice, and prosecute the same to judgment and execution, the surety giving such notice shall be discharged from all liability thereon.''

It appears to us too manifest to require elaboration that paragraph 3551 is broad enough in its terms to cover precisely such a surety contract as is in question in this case. It is contended that the notice should have stated that the right of action upon the bond had accrued, and that, if the bank should not comply with the notice, Head intended to avail himself of the discharge provided for by paragraph 3552. The contents of the notice are prescribed by statute. The notice as given precisely follows the language of paragraph 3551, and the discharge from liability follows as a matter of statute, with knowledge of which the bank was as effectually charged as it would be if Head had set forth his purpose to avail himself thereof.

Finally, it is contended that the notice was prematurely given. The record shows that prior to the institution of this suit the bank had paid off all of the liens made the subject of counterclaim in this action, being the liens referred to in the conclusions of law as ''lien claims filed by third parties''; and, also, had completed the building. Therefore, as to the amounts of these liens and the amount expended to complete the building, a right of action to enforce the penalty of the bond had accrued before the notice was served. However, the liens asserted by Head had neither been recognized as just nor paid by the bank. Its right of action on the bond as to a given lien cannot be held to have accrued so long as the

validity of the lien or its amount is in dispute. To that extent the liability of the obligors is unascertained. We do not believe that it is the intent of the statute that a surety may compel the obligee of a bond of this character to seek his remedy by successive actions upon the bond, as rights of action may accrue through the recognition or payment from time to time of lien debts. The legislative intent was not to enable a surety to harass the obligee by forcing him to bring successive suits upon the bond, but to enable the surety to establish the extent of his liability by forcing the obligee into prompt action when that liability shall have become finally ascertainable. If the bank had paid all the liens filed upon its property except one which is honestly disputed, and to enforce that one a third party were maintaining a suit, it seems to us that Head could not discharge his liability as surety to any extent by operation of a notice given during the pendency of such suit. A different application of the statute cannot be made merely by reason of the fact that the surety and the lien claimant are the same person. Therefore, during the pendency of this action, at any time during which, under the rules of pleading, such counterclaim could be filed, the bank could set up, by way of counterclaim, Head's liability as a surety to the extent of its expenditures in completing the building, and of the amounts of all liens which the bank may have paid, and also of the liens sued upon. Hence we concur with the appellant's contention that the notice given was premature, and that the trial court erred in his conclusion that by reason of the written notice plaintiff was released from liability upon the bond for lien claims filed by third parties and for the cost of completing said building. *Kauffman* v. *Commonwealth* (Pa.), 8 Atl. 600; *Scales* v. *Cox*, 106 Ind. 261, 6 N. E. 622.

4. This brings us to that assignment of error which presents the most serious difficulty, and to which the greatest attention was paid by counsel in their arguments. We have already observed that the contract provided that no alteration should be made in the work shown by the specifications, "except upon the written order of the architect." The trial court found as a matter of fact that, without such written order, the following alterations were made in the work shown by the specifications and provided to be done by the contract: "The tile floor in the banking room in said building was changed from common tile to rubber tile, at an additional

cost of $150. The second floor of said building was raised about eighteen inches, and additional joist and other materials were used therefor, at an additional cost of about $275. The flooring and other woodwork in the second story of said building was changed from Oregon pine to maple, at an additional cost of about $275." But it is further found that: "Such changes and alterations were made wholly at the expense of said bank, and did not, as a matter of fact, add to the liabilities of the sureties on the contractor's bond and did not affect or change the contract price in any manner whatever." From these facts the court found as conclusions of law: "That by the making of such changes and alterations . . . plaintiff was released from all liability on said bond, and is not liable upon said bond."

Appellee seeks to support the conclusion by the citation of numerous decisions of other courts, one of which is a decision of the supreme court of the United States. This is the case of *Miller* v. *Stewart*. In that case Mr. Justice Story announced: "Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent, in the manner, and under the circumstances pointed out in his obligation he is bound, and no further. It is not sufficient that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and the variation is made, it is fatal." *Miller* v. *Stewart*, 9 Wheat. (U. S.) 703, 6 L. Ed. 189. Since the publication of that decision, it has been universally cited as authority for the doctrine enunciated in the expression quoted. In determining the scope and application of this expression, however, it is significant to observe that in the case there before the court the contract of suretyship was to assure that a deputy collector of direct taxes and internal duties for the eight enumerated townships should "faithfully collect and pay according to law all moneys assessed upon said townships," and that after the original appointment of the deputy collector, and after the execution of the bond in question, his original appointment was extended and made to include in his collection district a ninth township. In considering the facts in the case, the court illustrate by considering the obligation of a surety upon a promissory note for $500, which

is afterward altered by agreement between the maker and the payee to a note for $600, and suggest that the alteration of the bond in question was similar to the alteration of such contract of suretyship upon the promissory note. The responsibility of the sureties was increased to the extent of the increased collections of the deputy collector by reason of the addition to his collection district of another township. The conclusion was reached that the sureties were released from their obligation. The general principle enunciated cannot be fairly extended beyond the requirements of the case determined; and, indeed, in the array of authorities so diligently cited to us by counsel for appellee, we find but few in which the application of the general statement is not as restricted as it was in the leading case. If the support is needed, we are fortified in our view by the later decision of the supreme court of the United States in *Benjamin* v. *Hillard*, 23 How. (U. S.) 150, 16 L. Ed. 518. In that case the contract, the performance of which was assured, required the contractors to complete the manufacture and delivery of certain machinery by "the first safe and navigable rise in the river." Without consulting the sureties, it was agreed between the principals that the completion and delivery of the machinery should be delayed until another rise in the river. This was unquestionably a change in the terms of the contract; yet the court held: "The evidence does not allow us to conclude that there was any intention to change the object or the means essential to attain the object of the original agreement. In its execution there were departures from its stipulations; but these seem to have been made on grounds of mutual convenience, and did not increase the risk of the surety. It is clear that the mere prolongation of the term of payment of the principal debtor or of the time of the performance of his duty will not discharge a surety or grantor. There must be another contract substituted for the original contract, or some alteration in a point so material as in effect to make a new contract without the surety's consent, to produce that result; but when the essential features of the contract and its objects are preserved, and the parties without objection from the surety and without any legal constraint on themselves mutually accommodate each other so as to better arrive at their end, we can find no ground for the surety to complain." The sureties there were held not to be released.

XI Ariz.—15

Paraphrasing this latter expression of the supreme court of the United States, we find in the case before us that the alteration in the manner of fulfilling the construction contract did not in effect make a new contract, or make a substitute for the original contract; that the essential features and the objects of the original contract were maintained; that the parties without any legal constraint upon themselves made modifications in detail, the entire expense of which was immediately borne by the obligee in the surety contract, did not add to the liability of the sureties in the contractor's bond, and did not affect or change the contract price in any manner whatever. Therefore we conclude that these departures did not operate to discharge the sureties. Several courts of last resort have reached similar conclusions; some of them going to an extent beyond that necessary for us here to go to reach our conclusion. *De Mattos* v. *Jordan,* 15 Wash. 378, 46 Pac. 402; *Hohn* v. *Shideler,* 164 Ind. 242, 72 N. E. 575; *Grafton* v. *Hinckley,* 111 Wis. 46, 86 N. W. 859; *Schreiber* v. *Worm,* 164 Ind. 7, 72 N. E. 852; *Smith* v. *Molleson,* 148 N. Y. 241, 42 N. E. 669; *Consaul* v. *Sheldon,* 35 Neb. 247, 52 N. W. 1104; *Ryan* v. *Morton,* 65 Tex. 258.

The judgment of the district court is reversed, and the cause is remanded for a new trial.

KENT, C. J., and DOAN and CAMPBELL, JJ., concur.