## BEN MILAVETZ v. S. OBERG AND ANOTHER.[1]

November 2, 1917.

No. 20,461.

**Building contract — surety not released by changes altering the cost, when.**

1. Where a building contract authorizes the owner to make changes in the work to be performed thereunder, and provides that the increase or decrease in the cost resulting therefrom shall be added to or deducted from the contract price, and that any agreement for changes made in writing shall not affect the liability of the sureties, the contractor by making the desired changes and receiving full payment therefor without having the agreement for the changes reduced to writing, waives that formality, and as such waiver does not affect the contract of his sureties in matter of substance they are not released thereby in the absence of an express stipulation to that effect.

**Same — payments — evidence sufficient.**

2. The evidence is sufficient to sustain the finding of the jury that plaintiff substantially complied with the requirements of the contract in the matter of making payments during the progress of the work.

[1]Reported in 164 N. W. 910.

**Same — surety not released by payments in advance of completion.**

3. Payments to the amount of three-fourths of the actual value of the work then performed were required to be made monthly; and the fact that, in consequence of paying these amounts as the work progressed, plaintiff had paid more than three-fourths of the contract price before the completion of the work, did not discharge the sureties.

**Same — surety bound by lien judgments.**

4. Defendants, having been given a proper opportunity to defend the action brought to enforce the liens filed against the building for labor and material, are bound by the judgment rendered therein.

**Same — measure of damages — harmless error.**

5. Making the judgment recovered against the contractor the measure of defendants' liability was not reversible error, although no proof was offered to show the nature or validity of the claims for which such judgment was rendered, as the amount thereof was less than the amount of the liens as established by the judgment in the lien action.

Action in the district court for St. Louis county against S. Oberg and Matt Lofbacka, sureties on a building bond of one Dahlvik, a building contractor, to recover $1,894.15 for mechanics' liens paid by plaintiff and the amount of a judgment obtained by plaintiff against Dahlvik. The case was tried before Hughes, J., who at the close of the testimony denied the motion of defendant Oberg for a directed verdict, and a jury which returned a verdict for $1,946.23. Defendant Oberg's motion for judgment notwithstanding the verdict was denied, and defendant Lofbacka's motion for judgment notwithstanding the verdict or for a new trial was denied. From the judgment entered pursuant to the verdict, defendants took separate appeals. Affirmed.

*John Jenswold* and *John D. Jenswold,* for appellants.
*Daniel W. Morgan* and *Edmund M. Morgan,* for respondent.

TAYLOR, C.

Oscar Dahlvik contracted to erect a dwelling house for plaintiff and to furnish all the labor and material therefor, and gave a bond, executed by defendants as sureties, to secure the performance of the contract and the payment of all obligations incurred for labor and material and to hold plaintiff harmless from any claim on account thereof. He erected

the house and received the contract price therefor, but failed to pay certain claims for labor and material. Liens were filed against the property for these claims and were subsequently foreclosed. Thereafter plaintiff brought suit against Dahlvik and recovered a judgment but an execution thereon was returned unsatisfied. He then brought this suit against defendants, as sureties on Dahlvik's bond, and recovered a verdict. Defendant Lofbacka made an alternative motion for judgment notwithstanding the verdict or for a new trial. Defendant Oberg made a motion for judgment notwithstanding the verdict but did not ask for a new trial. These motions were denied. Judgment was entered, and the defendants took separate appeals therefrom.

Defendants contend that they have been released from liability on the bond, and in support of that contention they assert: (1) That plaintiff made changes in the building not agreed upon in writing; (2) that plaintiff made payments to Dahlvik at different times, in different amounts, and in a different manner than the contract provides; (3) that plaintiff increased the cost of the work by wrongfully interfering with and hindering the performance thereof by Dahlvik and his employees.

1. The contract gave plaintiff the right to deviate from the plans and specifications and make any changes in the building that he should deem proper, and provided that the increase or decrease in cost resulting from such changes should be added to or deducted from the contract price. The bond made the contract a part thereof, and then provided that the bond should not be invalidated by any changes agreed upon in writing by plaintiff and Dahlvik. It contained no expressly prohibitive provisions. During the construction of the building, the plans and specifications were departed from in certain particulars at plaintiff's instance. Plaintiff testified that a writing specifying all the changes of any consequence, and the amounts agreed upon therefor was signed and given to Dahlvik; and that the full cost of such changes, amounting to the sum of $319, had been paid in addition to the contract price. Defendants asserted that this writing had not been signed, and that changes not specified therein had been made. The court charged the jury to the effect that, if plaintiff made changes in the building, this fact released defendants from liability, unless the changes were agreed upon and the agreement was reduced to writing and signed by plaintiff and Dahlvik, or

unless the jury found that plaintiff had paid Dahlvik the full value of all such changes and that defendants had been in no manner prejudiced by them. By their verdict the jury necessarily found either that the changes made had been agreed upon in writing or that they had been in no manner prejudicial to defendants.

Defendants contend that, if changes were made in the building which were not agreed upon in writing, they are released from liability under the bond, even if such changes were not prejudicial but beneficial to them; that as sureties who received no compensation for becoming such, any deviation from the strict letter of the bond, even if it enured to their benefit, discharged them from liability. In support of this contention they cite: Board of Co. Commrs. of Fillmore County v. Greenleaf, 80 Minn. 242, 83 N. W. 157; Board of County Commrs. of Renville County v. Gray, 61 Minn. 242, 63 N. W. 635; Flanigan v. Phelps, 42 Minn. 186, 43 N. W. 1113; Simonson v. Grant, 36 Minn. 439, 31 N. W. 861; Erickson v. Brandt, 53 Minn. 10, 55 N. W. 62; Tomlinson v. Simpson, 33 Minn. 443, 23 N. W. 864. In the first three cases cited, the instrument itself upon which suit was brought had been materially altered after its execution without the knowledge or consent of the sureties, and they were held not liable on the ground that the instrument sued upon was not the instrument they had executed. None of these cases involved building contracts. In Erickson v. Brandt, 53 Minn. 10, 55 N. W. 62, which involved a building contract, the owner had made changes which increased the cost of the work, and it was held that the sureties were discharged thereby; but the contract contained no provision authorizing the owner to make changes. In Simonson v. Grant, 36 Minn. 439, 31 N. W. 861, which also involved a building contract, the sureties were held not liable because the owner had failed and refused to make payments to the contractor as stipulated in the contract. The effect of changes in the work made at the instance of the owner was not involved or considered. In Tomlinson v. Simpson, 33 Minn. 443, 23 N. W. 864, no claim was made that the surety had been released from liability upon the bond, and the court merely determined the extent of such liability.

The instant case is distinguished from all the cases above cited by the fact that the plaintiff was authorized by the contract to make the changes in controversy. The question here is not whether the sureties were re-

leased by the making of unauthorized changes; but whether they were released by the making of authorized changes, unless such changes were agreed upon in writing in the manner provided in the contract. In other words, whether the mere failure to provide written evidence of the agreement for the changes released them. While there are decisions to the contrary, the weight of authority is to the effect that the contractor waives a provision that changes shall be ordered or agreed upon in writing by making the changes without requiring written authority for them, and that his waiver of this formality is not a matter of substance, and does not operate to release his sureties. Prescott Nat. Bank v. Head, 11 Ariz. 213, 90 Pac. 328, 21 Ann. Cas. 990; Bartlett & Kling v. Illinois Surety Co. 142 Iowa, 538, 119 N. W. 729; Hohn v. Shideler, 164 Ind. 242, 72 N. E. 575; Enterprise Hotel Co. v. Book, 48 Ore. 58, 85 Pac. 333; De Mattos v. Jordan, 15 Wash. 378, 46 Pac. 402; Grafton v. Hinkley, 111 Wis. 46, 86 N. W. 859; Smith v. Molleson, 148 N. Y. 241, 42 N. E. 669. It was so held by this court as to a compensated surety. Brandrup v. Empire State Surety Co. 111 Minn. 376, 127 N. W. 424. See also Consaul v. Sheldon, 35 Neb. 247, 52 N. W. 1104; Hinton v. Stanton, 112 Ark. 207, 165 S. W. 299; Cowles v. U. S. Fidelity & Guaranty Co. 32 Wash. 120, 72 Pac. 1032, 98 Am. St. 838; U. S. v. Walsh, 115 Fed. 697, 52 C. C. A. 419.

The mere omission to put the agreement for the changes in writing did not affect the contract of the sureties in matter of substance, and, being without substantial prejudice to them, did not operate to release them from liability in the absence of an express stipulation that such omission should invalidate the bond.

2. The contract provided for payments, on or before the tenth day of each month, to the amount of 75 per centum of the actual value of the work done during the preceding month, and that plaintiff should retain the remaining 25 per centum thereof until the completion of all the work, as additional security for the performance of the contract. The jury by their verdict found that there had been no substantial departure from these requirements, but defendants contend that this finding cannot be sustained under the evidence. We will consider briefly the more important grounds upon which they base this contention.

Dahlvik began work about the first of October and at his request pay-

ments were made during that month amounting to $205. Defendants insist that these payments were not due until November, and that plaintiff violated the contract by making them in October. The contract provided for payment for the work performed in any month, "on or before the 10th day" of the following month, and we see no violation of the contract in making payments during the month in which the work was performed, so long as such payments did not exceed 75 per centum of the value of the work performed at the time they were made.

Plaintiff was under the necessity of determining for himself the value of the work done in each month as the contract made no provision for determining such value. He claims to have determined such value according to his best judgment, and to have paid Dahlvik the proportional part thereof due under the contract. At the time the payments were made, they were accepted without any question being raised as to the correctness of the amounts. Defendants now insist, however, that the payments for each month were in fact much less than the amount due for the work performed in such month. The evidence leaves both the amount and the value of the work performed in the different months uncertain and indefinite. Defendants base their contention upon estimates made by Dahlvik while on the witness stand. These estimates for the different months, when added together, make a total which exceeds the contract price by more than 50 per cent. The jury could well find that they were inaccurate and excessive. They were by no means conclusive, and we are unable to say that the conclusion reached by the jury is not justified by the evidence.

Dahlvik applied for and obtained $1,000 from plaintiff to pay defendant Lofbacka for material purchased from him. Defendants now assert that plaintiff violated the contract by making this payment, for the reason that only a part of this material had then been furnished and none of it had then been incorporated into the building. As defendants also claim that more than this amount had been earned and remained unpaid at the time of this payment, they are not in position to claim that the payment was prematurely made; and so far as appears Dahlvik had the right to pay this money to Lofbacka if he so desired.

Defendants insist that plaintiff gave Dahlvik a promissory note of $400 due in 90 days and thereby obtained an extension of time which

violated the contract. The testimony justifies a finding that Dahlvik applied to plaintiff for money to pay the plumber which plaintiff de- clined to furnish at that time; that the plumber offered to take plain- tiff's note for $400 due in 90 days; that at the request of Dahlvik and the plumber and pursuant to an agreement that the note should be trans- ferred to and accepted by the plumber for the balance due him from Dahlvik, plaintiff executed it; that as a part of the same transaction it was transferred to and accepted by the plumber as agreed, and that plain- tiff subsequently paid it. The note was given to discharge Dahlvik's obligation to the plumber and accomplished that purpose. It was given to accommodate Dahlvik and satisfy the plumber, not to accommodate plaintiff, and was equivalent to money so far as Dahlvik was concerned. The jury were justified in finding that neither Dahlvik nor defendants had been prejudiced thereby.

Defendants, although strenuously insisting that plaintiff ought to have made larger monthly payments than he in fact made, complain because he did not retain one-fourth of the contract price and have it on hand at the completion of the work. The contract required plaintiff to make monthly payments, "to the amount of seventy-five per cent (75 %) of the actual value of the work done during the preceding month." The actual value of the work performed was made the basis for measuring and determining the amounts to be paid as the work progressed, and defendants do not claim that the payments made exceeded three-fourths of such value. On the contrary, they claim that the payments were less than that amount. The jury having found that the payments were made substantially in accordance with the rule prescribed therefor, the fact that, in consequence of making such payments, plaintiff had less than one-fourth of the contract price on hand at the completion of the work did not discharge the sureties. Graves v. Merrill, 67 Minn. 463, 70 N. W. 562; George A. Hormel & Co. v. American Bonding Co. 112 Minn. 288, 128 N. W. 12, 33 L.R.A. (N.S.) 513.

3. Plaintiff acted as his own superintendent and from time to time gave directions as to the manner in which the work should be performed. Defendants claim that he wrongfully interfered with the work and in- creased the cost thereof to their prejudice. The court charged the jury that defendants were released if plaintiff, by interfering with work which

was being properly performed, substantially increased the cost thereof. The evidence made this a question for the jury, and they found against defendants' contention.

4. The judgment establishing and foreclosing the liens was offered and received in evidence. There was other evidence as to the filing of liens against the property for labor and material, but no other evidence to establish the amount or validity of such liens. Defendants contend that they are not bound by this judgment as to either the amount or the validity of the liens. If they were properly notified to come in and defend the lien action, they are concluded by the judgment rendered therein. Trustees of F. P. C. of Duluth v. U. S. Fidelity & Guaranty Co. 133 Minn. 429, 158 N. W. 709, and cases cited therein. When plaintiff, at the trial of the present action, wished to procure the files for the purpose of proving a notice to defendants to defend the lien action and an agreement to do so, defendants assured him that such proof was unnecessary as they made no claim that they had not been given the opportunity to defend that action, and plaintiff rested upon this assurance. Defendants cannot now take advantage of plaintiff's failure to present such proof.

5. After the liens had been established against the property in the action brought to enforce them, plaintiff brought suit against Dahlvik and the defendants as sureties on his bond, apparently on the contract, and obtained a judgment for an amount somewhat less than the aggregate amount of the liens. While the sureties were named as defendants in that action, what part they took therein does not appear, and the judgment is against Dahlvik alone. This judgment was received in evidence without objection, and the court charged the jury that, if they found that defendants had not been released from liability on the bond, they should return a verdict for plaintiff in the amount of this judgment. The verdict returned is for the exact amount of this judgment. Defendants contend that this judgment is not evidence against them of anything except its own existence; that, as plaintiff presented no evidence to prove that it was rendered for the claims which defendants had obligated themselves to pay, it cannot be made the measure of their liability. The judgment was received in evidence without objection, and the parties and the court doubtless understood, at the time, that it was presented for the

purpose of fixing the amount of defendants' liability in case the bond was found to be still in force. The action in which it was rendered had been tried by the same attorneys and before the same court, and the defendants herein were parties to the action, although not parties to the judgment. But conceding defendants' contention to be well founded, we fail to see how they have been prejudiced by making this judgment the measure of their liability in the present action. They were unquestionably bound and concluded by the judgment establishing the amount of the liens, and this amount as so established materially exceeded the amount of the judgment in question. If this judgment had not been received in evidence defendants' liability, so far as the record shows, would have been measured by the amount of the liens as established in the other judgment. To give this judgment the effect of reducing that liability was not to the prejudice of defendants.

So far as important, the assignments of error are directed to one or more of the above questions, and the orders appealed from are affirmed.